Allen *v.* Suydam.

## S. & M. ALLEN *vs.* SUYDAM & BOYD.

An *agent* receiving for collection before maturity, a bill payable on a particular day after date, is held to strict *vigilance* in making *presentment for acceptance;* and if chargeable with *negligence,* is subject to the payment of all damages sustained by the owner.

Where the debt is lost through the *negligence* of the agent, the measure of damages *prima facie,* is the amount of the bill; the defendant is at liberty, however, to show circumstances, if any exist, tending to mitigate damages, or to reduce the recovery to a nominal amount.

ERROR from the supreme court. This was an action on the case, by Suydam & Boyd against S. & M. Allen, for *negligence* in omitting to present for *acceptance,* a draft for $616.89, drawn by one John Eastabrook, at New-York, on W. W. & J. E. Eastabrook, a mercantile firm transacting business at Concord, New-Hampshire, in favor of the plaintiffs, bearing date 21st July, 1833, and payable two months after date. The draft was received by the plaintiffs on 16th *August,* 1833, and on the same day placed by them, for collection, in the hands of the defendants, who were to be allowed a commission of one per cent. The defendants retained the draft in their possession until 2d *September,* 1833, when they transmitted it to the cashier of a bank at *Concord,* who received it on the sixth day of the same month. On the *seventh* he called upon the drawees, and asked if they were ready to accept, and was told they were not ; that they did not accept for the drawer without instructions, and had not received any instructions in respect to this draft, but expected to hear from the drawer in a short time. The cashier called again on the *tenth* day of September, and was then told by the drawers that they had been instructed by the drawer *not to accept* the draft, and that they accordingly should not accept ; whereupon it was protested on the same day for non-acceptance, and returned to the defendants. The draft, on its return, was received on the *sixteenth* day of September, by the defendants, who on the

same day sent it to the plaintiffs and demanded the receipt given
by them on receiving the note ; but the plaintiffs refused to give
up the receipt and take back the draft.   On the *nineteenth* of
September, the defendants applied to the plaintiffs to know
whether they wished the draft sent back to be protested for *non-
payment*, and were told that they had received it for collection,
and if by any want of attention, any accident should occur to the
draft, they would be held responsible.   On the 9th *October*,
1833, the drawer died *insolvent*.   When the draft was drawn, he
had funds in the hands of the drawees, the amount of which,
however, was not shown ; but when it was *presented* for accept-
ance he had no funds in their hands.   The drawees testified that
the lateness of the day of the presentment of the draft for accept-
ance, made no difference in regard to its acceptance, as it was an
invariable rule with them not to accept for the drawer without
previous advice.   It appeared that *subsequent* to the *sixteenth*
day of August, 1833, drafts drawn by John Eastabrook on the
same drawees, amounting together to the sum of $2000, were
*accepted* by them, and paid or secured to be paid.   It also ap-
peared that the drawer of the bill conducted business as a mer-
chant, in the city of New-York, down to the time of his death ;
whilst on the other hand, it was shown that on 24th *July*,
1833, his note due to the plaintiffs for $606.77, was protested at
Concord, and remained unprovided for until the draft in question
was given for its amount.   The presiding judge charged the jury,
that the defendants were bound to transmit the draft with all rea-
sonable diligence after its receipt for acceptance, and not having
done so, were guilty of negligence, and liable to the plaintiffs for
the amount of damages they had sustained.   That the court and
jury having no knowledge of what the amount of the damage
was, except from the proof of the amount of the draft, the jury
would find a verdict for the plaintiffs for the amount of the draft
and the interest thereon.   The jury found accordingly.   The
defendants, having excepted to the charge of the judge, sued out
a writ of error, removing the record from the *superior court of
law of the city of New-York* to the supreme court, where the

Allen *v.* Suydam.

judgment was *affirmed.* See the opinion delivered in the supreme court, 17 *Wendell,* 370. The defendants sued out a writ of error, removing the record into this court. The cause was argued here by

—— *Gray & S. A. Foot,* for the plaintiffs in error.

*D. Lord, Jun.* for the defendants in error.

After advisement the following opinions were delivered :

By the CHANCELLOR. Two questions of importance to the commercial community are presented for our consideration and decision in this cause : 1st. Whether an agent or broker who receives for collection a draft or bill of exchange payable at a particular day, or a certain number of days after its date, is under any obligation to present the same to the drawee for acceptance immediately, and before the time when the draft is due and payable ? And 2d. If he is, whether the person who has given him such draft or bill for collection, can, in case of his neglect to present the same before the day of payment, recover the whole amount due thereon, with interest ; although the owner has not in fact sustained damage to that extent, by the neglect of his broker or agent to present the bill for acceptance without any unnecessary delay ?

A bill payable at *sight* or a certain number of days *after sight,* must be presented for acceptance and payment, or for acceptance only, without unreasonable delay, or the drawer and endorsers will be discharged, for they have an interest in having the bill accepted immediately, in order to shorten the time of payment, and thus to put a limit to the period of their liability ; and also, to enable them to protect themselves by other means, before it is too late, if the bill is not accepted and paid within the time originally contemplated by them. But in relation to a bill payable *at a day certain,* as at a fixed time after its date, it is perfectly well settled, not only in this country and in England, but also in Scotland and in France, that the drawer or endorser of

the bill is not discharged by the neglect of the holder to present the same for acceptance immediately, or until the time when it becomes due and payable. If, however, such a bill is actually presented for acceptance, and is dishonored before it becomes due, notice of such dishonor must be given to the drawer or endorser without delay, or he will be discharged. 3 *Kent's Comm.* 2d ed. 82. *Townsley* v. *Sumrall*, 2 *Peters' U. S. R.* 170. *Goodall* v. *Dolley*, 1 *Tenn. R.* 712. *Bayley on Bills*, 212. *Glen*, 109. *Byles*, 102. *Evans*, 80. *Muir*, 22. 2 *Pardessus*, *No.* 358, *p.* 417, 2d *Paris ed.* All the writers agree, however, that the *owner* of the bill has an interest in having it presented for acceptance without delay, although such presentment is not necessary in the case of a bill payable on a day certain, to enable him to retain his claim against the drawer or endorser of such bill ; and that if the *agent* who has been entrusted with the bill for the purpose of getting it accepted and paid, or accepted only, neglects to comply with the direction of the owner, to get the bill accepted without any unnecessary delay, he will be liable to the owner for the damage which the latter has sustained by such negligence. *Pardessus* says, that the right to require an acceptance in such a case is one which the holder of the bill may use or not, as he thinks proper, but that it is certainly an advantage to him to demand such acceptance ; for if the drawer is in credit, the drawee will probably accept, and the holder will thus obtain an additional security for his debt ; whereas, if he delays to present the bill for acceptance until it becomes due, and the drawer fails in the meantime, the drawee may then refuse to accept ; and he might have added, for such is the rule of the French law on the subject, that if the bill was protested for non-acceptance before it became due, the holder would then have been entitled to demand, both of the drawer and of the endorsers, security for the payment of the bill when it should become due, or for reimbursement, with the expenses of protest and re-exchange. *Pardessus* also says, that the bearer of the bill may hold it as a mere agent, to do what is necessary for the interest of his principal ; in which case, he ought to

act according to the express or implied duties which are derived from his relation to such principal ; and among the duties which his situation imposes upon the agent, is that of presenting the bill for acceptance whenever the law or prudence imposes such an obligation upon him.   2 *Pard. No.* 358, *p.* 417, 420.   *No.* 583, *p.* 669.   It was upon this ground that the case of *The Bank of Scotland* v. *Hamilton,* referred to in a note to Bell's Commentaries and also in Chitty on Bills, was decided.   And *Glen,* who also has a brief note of that case, states as exceptions to the rule—that it is not necessary to present a bill, payable at a time certain, for acceptance, before it becomes due—the case of a direction to the payee or holder of the bill to present it immediately, and the case of a bill sent to an agent for negotiation. *Glen on Bills,* 109.

The counsel for the plaintiffs in error, however, attempted to take the case out of this last exception to the general rule, on the ground that these agents only received the bill for collection, and that they received no instructions to present it for acceptance before it became due.   I infer, however, from the note of the case of *The Bank of Scotland* v. *Hamilton,* as given by Glen, that the present case cannot be distinguished from that in this respect.   For it there appears that the bill then in question was finally presented for acceptance on the evening of the fourth day from its date, after the drawer had failed, and then only in consequence of a letter from Dunlop, who had sent the bill to the agents in Glasgow three days before.   From that statement of the case, I think we may fairly presume there were no special directions to the agents to present the bill for acceptance when it was originally sent to them for collection, especially as it had but four days to run when it was originally discounted by Dunlop.   On this subject, *Pothier* says, in regard to the endorsement of a bill by the owner thereof to another, as a *mere agent* to receive the amount due thereon for the endorser and as his proxy, " the contract which such an endorsement implies, and which it makes between the endorser and the person to whom he makes his order, is a contract of agency, and creates the ordinary obli-

gations of an agent; and consequently, he to whom the order is given is liable in the character of an agent, as regards his endorser, the owner of the bill, to obtain acceptance if it has not already been accepted, and to go when the bill becomes due to receive payment thereof, and remit him the amount; and also, in default of acceptance or of payment, to make the protests, &c. which are necessary in such cases, and the endorser on his part is bound to make good the whole of the expenses which have been incurred therefor by the endorsee." *Poth. Traite Du Cont. De Change, ch.* 4, *No.* 82. Again: "The bearer of the bill, where he is merely the agent of the owner, ought to present it as soon as possible to the drawee to have it accepted. It is very important to have it accepted, as it is only by accepting it that the drawee becomes bound to pay it. Without such acceptance, the owner of the bill has for his debtor only the drawer of the bill, to whom he has paid its value. Therefore if the drawer should happen to fail, the bearer of the bill who had neglected to present it for acceptance would be liable to damages, if it was his fault, in favor of the owner of the bill for whom he was agent." *Id. No.* 128. The principles thus laid down by *Pothier* are recognized by *Beawes* and *Paley* as sound and correct, in relation to the duties and liabilities of agents who are employed in negotiating or collecting bills of exchange; and I can see no good reason why they should not be applied to the case now under consideration. If the receiving a bill by an agent, to collect, implies an obligation on his part to take the necessary steps to charge the drawer and endorsers, by protest and notices, in case it is not accepted and paid by the drawee, I do not see why due diligence on the part of the agent, in procuring the acceptance of the drawee without delay, when it may be necessary or beneficial to the interests of the principal, should not also be implied, as it is the duty of a faithful agent to do for his principal, whatever the principal himself would probably have done if he was a discreet and prudent man. Even where the principal is habitually negligent in attending to his own interests, it forms no excuse for similar negligence on the part of his agent. The fact,

therefore, that the bill in this case was not put into the hands òf the agents for collection until some time after it bore date, was no legal excuse for their negligence in not sending it on for acceptance and payment without unnecessary delay. For these reasons, I agree with the court below, that the Allens were legally liable to the owners of this bill for the damages, if any, which the latter sustained by the non-presentment of the bill to the drawee for acceptance previous to the time it became due.

In relation to the amount of damages, however, I think the charge of the judge who tried the cause was clearly wrong ; and that it has unquestionably produced great injustice in this case. As we have before seen, the relation between the drawer or endorser of the bill and the person to whom it is transferred for the mere purpose of negotiation or collection, is not the relation of endorser and endorsee, so as to throw the loss of the whole amount of the bill upon the latter, if he neglects to present the same for acceptance and payment in time, or to give notice of its dishonor to the endorser, as required by law. Nor will the payment of the damages by the agent, have the effect to subrogate him to all the rights and remedies of the person from whom he received the bill, as against other parties who may be liable for the payment thereof ; but it is a mere contract of agency, which leaves the endorser to all his rights and remedies for the recovery of his debt as against other parties, and only renders the endorsee liable as agent for the actual or probable damages which his principal has sustained in consequence of the negligence of such agent. This principle was distinctly recognized by the court of king's bench in England, in the case of *Van Wart* v. *Woolly,* 5 *Dowl. & Ryl.* 374, where the plaintiff had not lost his remedy against the drawers of the bill, or the persons from whom he received it, by reason of the neglect of the agents to present it for acceptance in due time ; the drawers of the bill in that case having drawn without authority when they had no funds in the hands of the drawees, and Irving & Co., who had sent the bill to the plaintiffs in payment, not standing in the situation of endorsers of the bill, as their names did not appear upon it. In that case, however, if

there had been any evidence to warrant the belief, that the bill would have been accepted if an immediate acceptance or rejection of the bill by the drawees had been insisted on, according to the decision in the case of *The Bank of Scotland* v. *Hamilton*, the loss which had arrisen from the neglect of the defendant in not pressing for an acceptance, or in not giving due notice of the dishonor of the bill immediately, if it could then probably have been collected from the drawees, should have fallen upon *Wooley & Co.* instead of *Irving & Co.*, who had remitted the same to Van Wart ; and the plaintiff would then have been permitted to recover whatever damages had been sustained by such negligence, for the benefit of Irving & Co. In the respect, Irving & Co. stood in the same relative situation to Van Wart, as Dunlop did to the Bank of Scotland, in the case before referred to ; and Woolley & Co. occupied the situat on of Hamilton & Co., who were held liable in that case, in exoneration of Dunlop's liability. The only difference in principle which I can see between the two cases is, that in the Scotch case it was evident that the bill would probably have been accepted [and saved, if it had been presented for acceptance on *Saturday*, when it was received by the agent in Glasgow, instead of being kept back until *Tuesday* evening, when news of the drawers' failure had reached that place ; and therefore, to exonerate Dunlop, who remitted the bill, the agents in Glasgow were very properly charged with the amount of the bill, the whole of which had been lost through their negligence, except the small amount of dividend which the bank would be entitled to out of the drawers' estate under the commission of bankruptcy against him ; whereas in the case of *Van Wart* v. *Woolley*, there was no reason to believe that the bill would have been accepted if the agent had insisted upon an answer immediately, and there was as little probability that any thing would have been obtained from the drawers, if Van Wart or Irving & Co. had received notice of the dishonor of the bill immediately after it was received by the agent in London. In the latter case, therefore, the damage which either Van Wart or those who had transmitted him the bill in payment had sustained, was merely nominal. Besides,

Allen v. Suydam.

the supreme court of this state having decided, that neither the drawers nor Irving & Co. were discharged from their liability to the plaintiff by this neglect of his agent, neither of them in fact having been injured by such neglect, the plaintiff upon the second trial was, of course, only held to be entitled to such damages as he had sustained, and which were nominal only. If the rule laid down by the judge who tried the present case was correct, that the principal was entitled to recover the whole amount of the bill and interest, because there was no other evidence to enable the jury to discover what the damage was, then the plaintiff in the case of *Van Wart* v. *Woolley*, should have been permitted to retain his verdict upon the first trial ; as it did not then appear whether he could actually succeed in collecting the money, either from the drawers of the bill or from Irving & Co.; neither did it then appear whether by the laws of this state, where they resided, they were not actually discharged from liability, so that no judgment could be recovered against them, in consequence of the negligence of the agent. The granting of the new trial in that case, therefore, proceeded upon the principle that the agent was not liable for the whole amount of the bill, unless damages to that extent had been sustained by his neglect, and that to recover damages to that extent it was incumbent upon the party claiming, to give sufficient evidence to satisfy the court and jury that it was at least probable that he had sustained damages to that amount. Neither the Scotch or the English case, therefore, is an authority to sustain the charge of the judge in relation to the amount of damages in the present case ; on the contrary, the case of *Van Wart* v. *Woolley* is a direct authority to show that the agent ought not to be charged with the whole amount of the bill, unless there is sufficient evidence to render it at least probable that the whole amount of the debt would have been saved if the agent had discharged the duty which his situation imposed upon him.

Where there is a reasonable probability that the bill would have been accepted and paid if the agent had done his duty ; or

where, by the negligence of the agent, the liability of a drawer or endorser who was apparently able to pay the bill has been discharged, so that the owner of the bill cannot legally recover against such drawer or endorser, I admit the agent by whose negligence the loss has occured is prima facie liable for the whole amount thereof with interest, as damages ; unless he is able to satisfy the court and jury that the whole amount of the bill has not been actually lost to the owner in consequence of such negligence. The case under consideration, however, is one of a very different description. Here it is perfectly evident, from the testimony of one of the drawees, that the draft would not have been accepted at any time after it was received by the Allens for collection, as the drawees had received express directions from the drawer not to accept ; nor would they have accepted it, even without such a prohibition, unless they had previously been advised so to do by the drawer. The fact also, that the drawer's credit was not good at the time this draft was received for collection, he having suffered his note to Boyd &. Suydam to lie under protest for some time, and the express directions given by him to the drawees not to accept this draft, rendered it highly improbable that he would have paid the draft himself to save his credit, if it had been sent back protested at an earlier day. From the facts of the case, therefore, I think there was no ground for supposing that the owners had sustained any actual damage from the mistake of the Allens, in not sending on the bill for acceptance immediately after they received it for collection in New-York ; or that their chance of obtaining payment from the drawer was materially impaired by the delay of the protest for a few days. Under the circumstances of this case, therefore, I think the jury should have been instructed that, upon the evidence, the plaintiffs were only entitled to nominal damages; or at least they should have been told to find only such damages as they should, from the evidence, believe it probable the plaintiffs might have sustained by the delay in presenting the draft for acceptance immediately ; for I do not see how it is possible for any one to believe, or even to suppose it probable

Allen *v.* Suydam.

from this evidence, that the whole amount of this draft was in fact lost to the plaintiffs below, by the delay of the Allens in presenting it to the drawees, and giving notice of the dishonor thereof immediately to the drawer ; who never intended that it should be accepted and paid.

For these reasons I am of opinion that the judgment of the court below should be reversed, and that a *venire de novo* should be awarded ; to the end that no more damages may be recovered than such as a jury may believe it probable, from the evidence adduced, that the plaintiffs may have sustained from the negligence of their agents.

By Senator VERPLANCK. In this case the defendants in the court below were agents for collecting for a commission, a draft on another state, payable *after date.* What are the duties and responsibilities of agents in regard to presenting such paper for acceptance ? Legal authority as well as commercial usage, has long settled as a general rule, that the holder of a bill of exchange, payable at a specific time, is not obliged to present such bill for acceptance in order to hold the drawer or prior endorser. It is, indeed, usual as well as prudent, to do so, both for the sake of the added security and better credit of the paper, and because in case of refusal, recourse may be had immediately to the drawer. It is, therefore, the duty of an agent for collection, to exert the customary prudence, and present such paper for acceptance without delay, since, by neglect, his principal may either lose the drawee's security, and the credit it gives, or else be prevented from making such inquiries and demands, or using such legal or precautionary measures towards the drawer or other parties as might tend to secure his debt. This distinction was long ago stated by Pothier, who points out the different obligations of him who holds a bill as an agent, (" *mandataire,*") " who ought to present it for acceptance as soon as possible ;" and those of him who holds as owner, (" *lorsque le porteur est en meme temps le proprietaire,*") who may present it when he thinks fit. *Contrat du Change, partie* 1, *c.* 5, *art.* 128. This distinction was recog-

nized in the English elementary books, (see earlier editions of *Chitty on Bills*, and other writers there cited,) as part of the general commercial law of Europe, befoie any express judicial decision to that point. The modern case of *Van Wart* v. *Woolley*, 5 *Dowl. & Ryl.* 374, 3 *Barn. & Cress.* 439, has sanctioned the principle judicially, by deciding that the delay of an agent to give notice of non-acceptance of bills, subjected him to damages, even when the drawer was not discharged. The case of the *Bank of Scotland* v. *Hamilton*, cited in 1 *Bell's Commentary on the Laws of Scotland*, 409, decided by the Scotch court of sessions, is remarkable for its similarity to the present case, and is entitled to the same authority with us, as it receives in England, (see *Chitty on Bills*, 300, who refers to that case as an authority to this point,) as well on account of the general uniformity of the law of negotiable paper in the civilized world, as because it is evident from the books that on this head the Scotch law conforms to the English, and is much governed by its usages and decisions. In that case, a bill payable at Glasgow, three days after date, was sent to an agent at that city for collection. It is stated " that it is not customary for *porteurs* (bearers) of bills at short dates to present them for acceptance." Before the day of payment the drawer failed, and the Glasgow Bank refused to accept. It was not clear whether the bank would have accepted the draft if it had been immediately presented, for the bank had no funds of the drawer, and the practice had been to make provisions for such drafts at the day of payment. The action was against the agents. " The court held, that as *agents*, they were bound immediately to present the bill for acceptance."

Thus, it seems to be the general commercial law of the civilized world, that when a bill is payable at a day certain, the drawer and endorser are not discharged, if the bill is not presented until the day of payment. Yet it is still the duty of the *agent* for collection to present the bill for acceptance without delay, and to give immediate notice of refusal to accept. The reason of this, I take to be, that the drawer by fixing a day certain for payment, assumes the responsibility of providing funds at

Allen *v.* Suydam.

that time, whatever may have been his previous credit with the drawee. Again : an endorser makes, as the phrase is, "a new bill bill on the same terms ; and, besides, he waives his right of immediate acceptance, by not enforcing it, but putting his bill into circulation without acceptance." Not so, he who places a bill in his agent's hands for collection. He makes no waiver or postponement of any of his rights, but looks directly to the means necessary or expedient for his own security. In the present instance, the draft, which the payees might have retained until the day of payment, had they thought fit, was placed directly upon receiving it, in the hands of agents, who were to receive "a commission or compensation for collecting the same." It was retained for seventeen days by the agents, who could have forwarded it for acceptance the next day. Nor after it had been refused acceptance did they again present it for payment. In the delay of presentation for acceptance, there was want of due diligence. The principle is familiar, that an agent for pay is bound to use such means, care, skill and precaution, as are adequate to the due execution of his trust. He must use the ordinary diligence of a skilful and prudent man in such affairs. Now an early presentment for acceptance, is an obvious precaution which a prudent man of business would take, to ensure collection of a questionable draft. By this neglect or delay, the payees were prevented from making those demands and taking such immediate measures as to the drawer, on receipt of notice of non-acceptance, as might possibly have secured the payees in some way or other. At the late period at which they did receive such notice, they preferred looking to the responsibility of their agents. These must be held responsible for the consequences of their negligence to the amount of the damage so caused. Nor is it a sufficient defence of the agents, that the bill would not have been accepted if immediately presented, because the drawer had directed that it should not be, nor that it was uncertain whether the funds in the hands of the drawees were sufficient or not, to meet the draft at the day fixed for payment. At and after the time when the draft should have been

presented, the drawer was in business at New-York, struggling for and obtaining credit, and having the command of funds which he applied to pay other drafts presented subsequently to the date, when with due diligence, notice of the non-acceptance of this bill would have been received. Whatever might have been his first intention, it was not for a court and jury to assume the broad presumption that an immediate demand, upon return of the draft, with such other legal measures as the state of business between the parties or other circumstances might render advisable, would not have led to the ultimate payment. As a mere conjectural inference from the character and course of business of Eastabrook, as incidentally presented in the evidence, I should think the probability rather the other way; and that immediate and urgent measures might perhaps have prevented loss. His death and the consequent insolvency of his estate, have left all this mere matter of conjecture; but it is quite immaterial as to the question of the agent's duty and the right of action against him, though were it distinctly in evidence either way, it might affect the measure of damages.

Thus far, then, I think the law quite clear as to the rights of holders of bills, and the duties of collecting agents, but I have had more hesitation as to the rule of damages. Is the plaintiff in similar cases to be obliged to make out in evidence the precise actual amount of the damage he sustained, and thus to give to the party in fault all the numerous and great advantages of doubt, uncertainty and difficulty in the proof? Or are we to apply to these cases the doctrine of *laches* in commercial paper, as between the holder and other parties, and consider the agent as having made the paper his own by his neglect? Contradictory as these rules are, they have yet each their share of authority, and are just and wise when applied to other questions; but I am not satisfied with the equity in the commercial policy of either, when applied to a collecting agency, and I have sought in the decisions for some safer and more equitable doctrine on that head.

Considering the subject in regard to commercial policy, there

is, on one side, the vast amount of paper daily collected through our banks, the great public necessity for giving every facility and inducement to such collections, the serious drawback on those facilities and inducements that would be occasioned, and the opportunity of fraud afforded if worthless paper deposited for collection can, whenever parties are discharged by the blunder of a clerk, be saddled irrevocably on responsonsible agents and " made their own" absolutely and without allowing any defence or mitigation of damages. On the other hand, the policy of holding such agents to strict accountability is equally clear. Our whole system of negotiable paper and its responsibilities, formed, as it is, by long experience, and admirably adjusted to the varied uses of commerce, rests upon the single principle of strict punctuality in demands, presentments and notices, as well as in payments. Now the policy and necessity of that punctuality, apply with the same force to the agent of such paper that they do to the principal. I can, therefore, find no sounder rule of damages, nor one better protecting and reconciling all these claims of policy and justice, than that pointed out by the decisions in a large class of cases of agency, and by the analogy of the measure of damages in trover. In those cases, the presumption is, in the first instance, to the full nominal amount of the loss, as it appears on the face of the transaction against the agent wanting in diligence, or the party guilty of the tortious conversion. Thus, where an agent or factor neglects to insure for his principal, according to order, he is held responsible for the default, *prima facie*, to the total amount which he ought to have covered by insurance. But at the same time he is allowed to put himself in the place of the underwriter, and to prove fraud, deviation, or any other defence which would have been good, had the insurance been made, or which would go to shew that nothing at all, or how much was actually lost by the neglect. *Delancy* v. *Stoddart*, 1 *T. R.* 22. *Wallace* v. *Tellfair*, 2 *id.* 188. *Webster* v. *De Tastet*, 7 *id.* 757. In the courts of this state, *Randle* v. *Moore*, 3 *Johns. Cas.* 36. And in the courts of the United States, *Morris* v. *Summeril*, 2 *Wash. R.* 203. *See also* 1 *Phil. on Ins.* 521,

*and the cases there cited.* So, too, in actions against sheriffs, where those official public agents become chargeable with the debt of another, by their own negligence or misconduct. When the default is established, the amount due the plaintiff in the original suit, is the *prima facie* evidence of the measure of damages. This presumption may be controlled or rebutted, and the sheriff may give in evidence any fact, showing either that the party has not been actually injured, or to a much less amount. He may show, for instance, the insolvency of the original debtor. But the burden of proof is upon him ; if he leaves the presumption uncontradicted, that establishes the measure of damages. This has been frequently ruled at our circuits, nor can I find that it has ever been questioned in our supreme court, and is substantially recognized in *Potter* v. *Lansing*, 1 *Johns. R.* 215, *Russell* v. *Turner*, 7 *id.* 189. The Massachusetts decisions are particularly full and express on this very point. See 10 *Mass. R.* 470; 11 *id.* 89; *ibid.* 188 ; 13 *id.* 187. Similar decisions may be found in the reports of other states. So again in trover. In *Ingals* v. *Lord*, 1 *Cowen*, 240, in trover for a note, it was held, that the *prima facie* measure of damages was the face of the note ; but that evidence might be given to reduce the amount, by proving payment in part, or the insolvency of the maker, or any other fact invalidating the note or lessening its value.

It is true, that Lord Tenterden, in *Van. Wart* v. *Woolley,* above cited, held that damages must be shewn, and that the face of the bill is not the *conclusive* measure ; but this I think is not in contradiction to the view that I have taken. I therefore take the cases before mentioned to point out the sound doctrine here. The face of the bill is the *prima facie* measure of damages. These may be reduced by any positive evidence proving the real damage to be less ; but the burden of that proof must be upon the negligent agent, and not on the party who suffers by his negligence. Circumstances like those of the present case, may often render it difficult or impossible for either party, to prove or even to form a probable estimate of the precise damages incurred by the agent's neglect. In such cases, is it not just that those

chances of loss which must fall upon one or the other, should be thrown upon the party in default, and not upon the innocent sufferer ? It was, then, for the defendants here to show that the debt would not have been paid had due diligence been used, or that there were any other circumstances to diminish the actual damages below the nominal amount. I do not see that this was done, and therefore think that Chief Justice Jones was right in his charge, " That the court and jury having no knowledge what the amount of damages was except from the proof of the amount of the draft, the jury should find for the plaintiffs for the amount of the draft, and interest from the day it became due."

Perhaps the case was a hard one. So are many others that arise under our law of negotiable paper, in consequence of *laches* of parties. In all such instances, the hardship of the particular case must yield to the necessity of adhering to some general rule founded on broad considerations of public policy. I can find no such rule safer or more conducive to commercial convenience, or sanctioned by stronger authority than the one I have stated.

If, however, we abandon this rule, the only alternative, in my judgment, so far as authority governs, is to adopt the stricter doctrine of our supreme court, in *Le Guen* v. *Gouverneur & Kemble*, 1 *Johns. Cas.* 467, and affirmed in 1800, in this court, " That where the property consists of *credits*, the agent whose breach of orders causes damages, is bound to answer to the amount of the credits, and the principal may abandon to him." The only defence distinctly recognized as valid in those doctrines, is that of fraud, or some similar one going to invalidate the whole contract.

Upon this principle, the agents here would be held to have made the paper their own by their default, if the plaintiffs below thought fit to abandon it to them ; and this, perhaps, is the ground on which the superior court rested their decision in this case ; the reasons of which I regret that we have not before us.

Under the circumstances of the case, either this rule or that which I have stated before, would affirm the judgments of the courts below ; but I place my own vote for affirmance upon the

ground first stated, as being the most equitable, the most conducive to public policy, and as supported by the analogy and authority of many modern decisions.

On the question being put, *Shall this judgment be reversed?* the members of the court divided as follows : 20 in the *affirmative,* and 4 in the *negative.* Whereupon the judgments in the courts below were *reversed,* and a *venire de novo* directed to be awarded by the superior court.

In the rule for judgment of reversal, the following entry was made : " It is further ordered and adjudged, that an " *agent* who " receives a bill of exchange for *collection* which has not been " accepted, is bound to present the same for acceptance without " unreasonable delay, as well as to present the same for payment " when it becomes due, or he will be liable to his *principal* for " the damages, which the latter sustains by such negligence."