THE CENTRAL GEORGIA BANK, plaintiff in error, *vs.* THE CLEVELAND NATIONAL BANK, defendant in error.

1. When a bank, having taken a solvent bill for collection, is, before it matures, instructed to allow it renewed for a further term of credit,

42

on condition that a solvent indorser shall be given on the new instrument, and the bank suffers the renewal to be made without such indorser, surrendering the former bill to the acceptor, and reporting by its cashier that a renewal has taken place in conformity to instructions, and the holder is damaged by reason of the acceptor becoming insolvent pending the extended term of credit, the bank is liable for the damage actually sustained.

2. Whether, on the question of damage, the solvency of the drawer is material or not, depends upon his equitable relation to the debt, upon the diligence he had a right to expect, and upon the consequence to him of any failure in such diligence. If the holder would have no right to resort to him for payment, by reason of the same violation of instructions complained of in the action, his ability to respond would make no difference.

3. In an action against a bank touching a bill received by it for collection or renewal, and for violating instructions in respect to the same, the law implies a contract on the part of the bank to obey instructions, and on the part of the bailor to pay reasonable compensation; and the omission of proper allegations as to such implied matters, will not render the declaration fatally defective. It is amendable.

4. Where, on motion of the plaintiff, the court below has granted a first new trial, the supreme court, in reviewing the decision, will not be over-strict in squaring the evidence with the declaration. If the evidence considered broadly in its main features, seems to envelope a solid, sound case, and the declaration can be amended to fit it, the judgment granting a new trial will be affirmed.

5. When the verdict is for the defendant, a new trial granted, and the defendant brings his writ of error, exceptions taken by him in the progress of the trial, and entered *pendente lite*, need not be considered, though error be assigned thereon; for, as the verdict was in his favor, it is apparent that the matters ruled against him in the course of the trial, did not influence the main result.

Banks. Contracts. Practice in the Supreme Court. New trial. Before Judge HILL. Bibb Superior Court. October Term, 1876.

Reported in the opinion.

IRVIN & GRESHAM, for plaintiff in error.

HALL, LOFTON & BARTLETT, for defendant.

BLECKLEY, Judge.

A bank at Macon, Georgia, was entrusted by a bank located at Cleveland, Tennessee, with a draft drawn at the latter place by a third person, on a firm doing business at the former place. It was drawn payable to one of the members of the firm, and was transmitted, as stated in the accompanying letter of instructions, for acceptance, indorsement by the payee, and usual returns when paid. This was in August, and the draft was to mature in October. A few days before its maturity, the Tennessee bank forwarded to the Georgia bank a similar draft, due at thirty days, with instructions to cancel the former, when the latter should be accepted and indorsed as before, together "with additional solvent indorser." The Georgia bank replied by letter, through its cashier, that the new draft had been accepted and indorsed "as requested," and the old one surrendered. A second extension of thirty days took place in precisely the same manner, and under like instructions, attended with the same response as to compliance. In point of fact, however, both renewals were made without any additional indorser, the parties to all three of the bills being the same persons, and no others. About the time of the last renewal, the acceptors failed, and the bill, at maturity, was dishonored and went to protest. The failure amounted to total insolvency, and the indorser of the bill, being one of the accepting firm, went down with the rest. Until after the first renewal, the parties were in good credit. The Tennessee bank was not aware of the violation of its instructions until after the failure. In an action by that bank against the Georgia bank for damages, the jury found for the defendant, and the court granted a new trial, the grounds of the plaintiff's motion therefor being, that the verdict was contrary to law and evidence, to the charge of the court, to justice and equity, without evidence, and strongly and decidedly against the weight of evidence.

1. The collection and renewal of bills appertain to the

business of banking.   Here the bill of August was accepted and indorsed while in the hands of the Georgia bank, and it was retained by that bank to collect and make the usual returns, the two banks, as appears by the evidence, having had previous dealings of the like kind.   Had there been no further instructions, the simple duty of the bank was to receive payment, if made, and remit as usual; or, in the event of non-payment at maturity, to take the ordinary steps in respect to dishonored paper.   But other instructions arrived before the bill matured, the import of which was, to allow the new bill to be substituted, on condition that it was indorsed by an additional solvent indorser.   These instructions modified the duty of the collecting bank, so far only as to authorize it to treat the former bill as discharged by the latter, if the latter should be made complete in the way indicated by the instructions.   A failure on the part of the acceptors and the indorser so to complete it in time to put it in place of the other, left the duty of the bank just what it was before.   The bank should have treated the first bill as dishonored, and dealt with it accordingly; but instead of so doing, it surrendered it, took the new bill without any additional indorser, and, returning it for collection when it should become mature, reported that it had been accepted and indorsed " as requested."   When the new bill matured, the like instructions as to it were treated in the same way.   The result was, that by the two renewals, the term of credit was extended sixty days, without any additional security whatever; and, in the meantime, the acceptors and the indorser became insolvent.   The bill taken on the second renewal, was retained for collection, as its predecessor had been, and the owner knew nothing of the violation of the instructions in either instance until it was too late to obviate the consequences. Resting on the report that the required indorsement had taken place, the Tennessee bank naturally relaxed the vigilance which, on correct information, it would probably have exercised.   Its right to call on the Georgia bank to make good the damages is unquestionable.

2. But it is suggested that no damage has been sustained unless the drawer is insolvent, also. In the absence of evidence to the contrary, the presumption is that the drawer had funds in the hands of the acceptors. 1 Parsons on Notes and Bills, 323 ; 10 *Ga.*, 333 ; 25 *Ib.*, 171 ; acts of 1864–5, (pamph. 102) repealing section 2729 of the Code of 1863. The acceptor stands in the relation of maker, and the drawer in that of indorser. 1 Parsons on Notes and Bills, 54, 55 ; 21 *Ga.*, 135. Discharge of acceptor, discharges the drawer, 36 *Ib.*, 410. Of course the solvency of the acceptor is at the risk of the drawer, and not at that of the holder, where there has been no misconduct by the latter or his agents. But the evidence in the record indicates that the renewal drafts were drawn for use only in case the additional indorser should be procured. Let us suppose the facts to be thus : the drawer, having funds in the hands of the acceptors, drew the bill of August, payable to a person who was really a member of the acceptors' firm, though his name did not appear in it, and perhaps his membership was unknown to the drawer ; this bill was handed to the Tennessee bank, and by it forwarded to the Georgia bank, who had it accepted, and by the payee indorsed in blank ; it was then in a condition to be claimed and used by the Tennessee bank as its property ; that bank, on being advised of the completion of the bill in this manner, discounted the same, advancing the amount to the drawer,—or, perhaps, it made the advance on first receiving the bill, in anticipation of the acceptance and indorsement as contemplated ; on the eve of maturity, the acceptors, desiring to renew for thirty days, induced the drawer to consent to it, on condition that a fresh solvent indorser should be added on the new instrument ; the bill of October was drawn by him to carry out this arrangement, and, with knowledge that such was the object, the Tennessee bank received and forwarded the same to its agent, the Georgia bank, with appropriate instructions ; the instructions were violated, but the violation being unknown to the drawer, he consented to a second renewal on the like terms,

and the instructions were again violated; instead of closing out the credit when the August bill matured, the drawer had the risk of the acceptors' solvency thrown upon him for sixty days longer, by reason of the renewal bills having been used under circumstances which were not in his contemplation—that is, the failure of the acceptors to strengthen the paper with a good indorser; this misuse of the renewal bills, being by the agent of the Tennessee bank, was the same as if by the bank itself. Supposing these to be the facts, in substance, would the drawer be still liable, in face of the further fact that the acceptors and the one indorser became insolvent, pending the extended term of credit? If he would, it would be for this reason: that, though he contemplated the addition of another indorser, in case further time should be given, yet, he was mistaken if he thought the obtainment of another indorser would be to him any advantage or protection. He, it might be said, would have been liable to that indorser, and not that indorser to him. 1 Parsons on Notes and Bills, 54, 55. The reply, if any there be, is, that if his real situation was that of surety for the acceptors, they having his funds, and his contract being upon a bill drawn in August and maturing in October, any change of that contract must be with his consent, and on the terms which he prescribed. If, therefore, he authorized the substitution of the new bill on a condition useless to himself, and the condition was disregarded, he might claim the principle announced in section 2153 of the Code—"A change of the nature or terms of a contract is called a 'novation; such novation, without the consent of the surety, discharges him." Perhaps the sound distinction is this: a condition which the drawer intended to be for the benefit of the holder, and in nowise for his own advantage, and not being capable of promoting his advantage, would not be material as between themselves; but a condition believed to be advantageous to the drawer, or intended to be, whether legally capable of being so or not, would be material, and its disregard would work a discharge, where the drawer was in fact a surety for the acceptor; that

is, where his funds were in the hands of the acceptor, or where the drawer became a party to the bill solely for the acceptor's accommodation. Of course, there are many transactions in which the apparent relation between the two parties is not the real one—cases in which the acceptance is for the drawer's accommodation, and in which the suretyship is consequently on the part of the acceptor. Code, § 2151. If the case before us be, at bottom, one of this kind, the drawer is the actual debtor, and is not discharged. The holder may resort to him for payment, and his ability to pay would furnish an answer to the present action, as to anything beyond nominal damages. There is however, no evidence in the record which tends to negative the general presumption that the debt was that of the acceptors, and not a debt, primarily, of the drawer. The evidence in the record does not make it clear whether or not the drawer prompted the instructions to take an additional indorser, or even whether he knew of the instructions. It may be that he had nothing to do with the scheme of exacting an additional indorser, in which event the failure of the scheme would, of course, not discharge him, and his solvency would go in mitigation of damages in the present suit. If his name made and kept the bill secure, to the Tennessee bank, the recovery against the Georgia bank should be for nominal damages only, with costs of suit. But though, in the present state of the evidence, a case be made for no higher measure of recovery than this, the discretion of the court in granting a new trial ought not to be interfered with. While, in matters of contract, a reviewing court would not constrain the grant of a new trial, on a right to mere nominal damages, it would not forbid a new trial which the presiding judge, in the exercise of his discretion, thought proper to grant on such a right.

3. No contract is expressly alleged in the declaration for compensation to the Georgia bank, or for obedience on its part to the instructions which it received from the Tennessee bank. But facts are averred from which the law will imply a contract touching these matters. A bill is sent for-

ward, in respect to which certain services, appropriate to the business of a bank, are to be rendered. This is a bailment. In contemplation of law, the bailor agrees to pay for the services, reasonable compensation. The bailee receives the bill and retains it, in the usual course of business, giving no notice that the bailment is declined, or that instructions will not be complied with. Further instructions arrive, and, instead of objecting to them, reply is made that they have been complied with. In contemplation of law, there is an undertaking to comply. Though the declaration is somewhat defective in not alleging the contract in direct terms, the defect is not fatal. The declaration is amendable, and may be amended at any time.

4. The case made by the evidence is not as correctly set forth in the declaration as it should be. But finding in the evidence a solid, substantial cause of action, and the declaration being amendable to fit it, we shall not be overstrict, upon this the first grant of a new trial, in squaring the proof with the pleading. The two can be brought together when the new trial is had. If the court below had refused a new trial, we should have felt it our duty to be more attentive to the short-comings of the declaration.

5. In the progress of the trial the defendant took various exceptions, and had them entered *pendente lite*. He assigned error on them here, but by the grant of a new trial, the case was left pending below, and our affirmance of the judgment leaves it still pending. As the verdict was for the defendant, the errors, if any, committed on the trial, did not influence the result, and hence they are not now to be considered. Code, § 4250.

Cited for plaintiff in error, (liability ultimate, not primary,) 3 Ala., 206; 20 Wend., 324; (mitigation of damages) 3 Dev., 408; Ang. and Ames Cor., 226; Whar. Agency, § 252; 20 Wend., 324; 3 Hill, 560; (new trial, when not granted,) 40 *Ga.*, 266; 30 *Ib.*, 212; 2 *Ib.*, 1; 16 *Ib.*, 368; 30 *Ib.*, 858; (declaration bad, and not curable,) 17 *Ga.*, 96; Code, § 3480.

Cited for defendant in error, (declaration sufficient) 1 Kel-

ly, 68 ; 23 *Ga.*, 49, 50 ; (liability) 1 Peters, 25 ; 9 Wend., 46 ; 11 *Ib.*, 473 ; 6 Blackford, 225 ; Sher. and Red., on Neg., § 239 ; Code, § 2184 ; 12 *Ga.*, 205 ; 13 *Ib.*, 508 ; (jury bound by charge) Code §§ 3927, 3933.

Judgment affirmed.