### CROUSE *v.* FIRST NAT. BANK.

*(Supreme Court, General Term, Fourth Department. July, 1891.)*

**BANKS AND BANKING—COLLECTION OF DRAFT—NEGLIGENCE.**
　　Plaintiff drew a draft, "without protest," on his debtor, payable at sight, and inclosed it to defendant bank for collection, without instruction of any kind as to presentment. The drawee lived seven miles from the bank, and defendant notified him by mail, according to its custom, as well as that of other bankers in the vicinity, that it held the draft. About a week thereafter the drawee came to the bank and accepted the draft. The drawee was insolvent when the draft was drawn, and executed an assignment two weeks after accepting the draft. There was no evi-

dence that defendant's, officers were aware of the drawee's financial condition. *Held*, that the evidence was insufficient to sustain a finding of negligence on the part of defendant in not making an immediate presentment of the draft.

Appeal from judgment on report of referee.

Action by Charles E. Crouse against the First National Bank of Penn Yan to recover damages for the alleged negligence of defendant in failing to collect a draft drawn by Crouse & Walrath on P. M. Dinehart, on February 14, 1884, for $400. From a judgment for plaintiff, defendant appeals.

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

*John T. Knox*, for appellant.    *Samuel R. Stern*, for respondent.

MERWIN, J.    On the 14th February, 1884, Peter M. Dinehart, of Friend, Yates county, N. Y., was indebted to Crouse & Walrath, a firm at Syracuse, N. Y., of which the plaintiff is the survivor, in the sum of $810.98 for balance of account for goods sold and delivered. At that date Crouse & Walrath, on account of this debt, made a draft, a copy of which is as follows: "SYRACUSE, N. Y., Feby. 14, 1884.    At sight, (protest waived,) pay to the order of G. H. Lapham, Esq., cashier, four hundred dollars.    Value received.    CROUSE & WALRATH.    *To P. M. Dinehart, Friend, N. Y.*" This upon the same day they mailed to defendant, a banking institution at Penn Yan, N. Y., of which Lapham was cashier. The letter inclosing it contained no instructions. It was simply, "We inclose d'ft Dinehart 400." This, in due course of mail, was received by defendant on February 15th. On that day, as Lapham testifies, Dinehart was notified by mail of its receipt by the bank. Friend, the place where Dinehart lived, was seven miles distant from Penn Yan, and the time of the mail between the two places was about three hours. On the 21st February, Dinehart was in the bank. The draft was presented to him. He said it was all right; that he couldn't pay it that day, but would the next week. He was asked to accept it. Said he would, and thereupon Lapham wrote on the draft, "Accepted. Payable at the First Nat. Bank of Penn Yan, Feby. 21, 1884," and Dinehart signed it. On the same day the cashier sent by mail to Crouse & Walrath a card, as follows: "I have your letter of 14, with inclosure as stated.    400 payable some time next week. Says this is the best he can do."    C. H. Walrath, a witness for plaintiff, testifies that on the 22d or 23d February, 1884, he, at the request of Crouse & Walrath, called at the bank, and asked a man at the desk about the Dinehart draft, and was informed: "That will be all right; that's all right."    On 3d March, 1884, Crouse & Walrath wrote the bank, asking: "Has Mr. Dinehart made arrangements to pay his draft? Will you also kindly inform us how good you consider him?"    To this the cashier replied on the 6th, inclosing the draft, and stating that he had just learned that Dinehart had made an assignment. The assignment is dated March 6th. On March 10th, Crouse & Walrath commenced an action in replevin against the assignee to obtain the goods for a part of which the draft was drawn. In the complaint in that case the plaintiffs allege ownership of the goods by reason of fraud of Dinehart in obtaining them. This action was tried in October, 1885, and the defendant therein succeeded. The present action was commenced in September, 1884. There had been some prior dealings between Crouse & Walrath and the defendant. On the 14th November, 1883, they drew and sent to defendant a similar sight draft on Dinehart for $300, and the proceeds were remitted by the defendant to them on November 21st following. It was shown that the custom of the defendant and the other banks at Penn Yan, in reference to giving notice of drafts forwarded and drawn on persons residing in the country away from the village, was to notify them by mail unless they had special instructions to present, in which case they employed a notary. It does not appear that defendant knew that Dinehart was embarrassed, or had any information about the assignment or intent to assign, until after it was made. The cashier testifies that he had

not the least suspicion that the draft was not good if accepted, and that he presented it at first opportunity. Dinehart kept no account at the bank, though he did more or less business there. It is quite clear from the evidence that Dinehart was in fact insolvent when the draft was drawn. It was shown that he paid no debts after the 21st February. These are the main features of the case. The referee finds that the defendant was guilty of negligence in the discharge of its duties as agent of Crouse & Walrath in the collection of the draft, by reason of which they suffered damage to the amount of the draft. We think this finding is not sustained by the evidence. In the absence of specific directions, the defendant had a right to act in the matter of presentment according to the custom of the banks in that vicinity. The draft, by its terms, was not to be protested. It was not a question of making other parties liable. The draft was drawn for a part of the debt. The whole remained just as before. The draft was adopted as a convenient way of obtaining part payment. It was not expected that the strict rules as to commercial paper would apply. The form of the acceptance or the delay was not objected to. The reply given to the inquiry at the bank on the 22d or 23d February was evidently a matter of opinion, and given in good faith. Crouse & Walrath, by the letter of 21st February, were informed of the situation. Nor does the evidence warrant the inference that, had the draft immediately been presented, it would have been probably paid. In *Failing* v. *Fargo*, 12 Wkly. Dig. 121, it was held by the general term in the fourth department, in a case like the present, that damages to the whole amount of the draft are recoverable only when it is reasonably probable from the circumstances of the case that the draft would have been accepted and paid by the drawee if the defendant's agent had done his duty in regard to its collection. The rule laid down by the chancellor in *Allen* v. *Suydam*, 20 Wend. 329, was followed. Judgment reversed, and new trial ordered before another referee, costs to abide the event. All concur.