### HOWARD v. BANK OF THE METROPOLIS.

(Supreme Court, Appellate Division, First Department. June 10, 1904.)

1. BILLS AND NOTES—DEPOSIT FOR COLLECTION—PROTEST—FAILURE TO NOTIFY INDORSER.

Where defendant bank, having a note for collection, had it protested, but failed to notify an indorser of its nonpayment, though it had the indorser's address, with the request that he be notified, and the death of the maker shortly thereafter precluded an action against him, and his estate had not been administered on, there was evidence to justify a finding that the plaintiff had been unable to collect the amount from the maker, and that, in consequence of the neglect of the defendant, the plaintiff had sustained damage to the amount that he would have been able to collect from the indorser, had the bank performed its duty, and the payee need not prove the insolvency of the maker.

2. SAME—ACTION AGAINST COLLECTOR—EVIDENCE.

In an action against the bank, testimony, by a witness who stated that he knew of his own knowledge that the maker was indebted at the time of his death, as to the names of the creditors and amounts, was competent on the question of plaintiff's ability to collect from the maker.

3. SAME—AMOUNT OF DAMAGES.

The amount of damages would depend on the inability of plaintiff to collect from the maker.

Appeal from Trial Term.

Action by Robert S. Howard against the Bank of the Metropolis. Judgment for defendant, and plaintiff appeals. Reversed.

Argued before HATCH, McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

¶ 3. Banks and Banking, vol. 6, Cent. Dig. § 650.

William B. Ellison, for appellant.
John Delahunty, for respondent.

INGRAHAM, J.  The plaintiff, being on or about January 14, 1898, the owner of a promissory note made by one Starbird and indorsed by Ira Van Gieson, due April 5, 1898, delivered it to the defendant, with whom he had an account, for collection.  There were deposited with this note certain certificates of stock, which were held as collateral, and which the plaintiff directed the defendant to return to the maker upon payment of the note.  When the plaintiff delivered this note to the collection clerk of the defendant, he handed to him a card having upon it, "Dr. Ira Van Gieson, No. 1 Madison Avenue, City," stating that he wanted the note protested carefully, as he expected to hold the indorser for its payment, not considering the maker of the note responsible; that he was going to California, and would not be in the city at the time the note was due; that the address appearing on this card was that of the indorser of the note.  The defendant accepted this note for collection, with this information, and the plaintiff left New York, not returning until about the 18th of April.  On the 5th of April, when the note became due, it was presented to the maker for payment, and payment was refused, whereupon it was sent to the notary of the bank for protest.  The bank, however, failed to deliver to the notary the card with the name and address of the indorser, and gave him no instruction as to the service of the notice of protest.  The notary protested the note, made out the certificate of protest, which he signed, and sent with the note to the bank by his clerk, who inquired of the collection clerk, to whom the plaintiff had delivered the note, whether he knew the address of the indorser.  The notary or his clerk misread the indorser's name as "Waran Gieson," instead of his correct name, "Ira Van Gieson," and the collection clerk of his bank said that he did not know the address of the indorser, whereupon the notary's clerk made out the notice of protest—one directed to R. S. Howard, the plaintiff; and the other to "Waran Gieson," indorser.  Both of these notices were put in an envelope and addressed to R. S. Howard, 110 Fifth avenue.  Neither of these notices was ever received by the plaintiff, as he was at that time absent from New York.

In the early part of June, 1898, the maker of the note died in the city of New York.  It was admitted that his estate was never administered on, and that prior to his death he was indebted to others, who were unable to collect their claims, and that the stock held as collateral was of no value.  A witness was called, who testified that he knew of his own knowledge that Starbird, the maker of the note, was indebted to others at the time of his death.  He was then asked to state the names of those persons to whom the maker of the note was indebted at the time of his death, and the amount of the indebtedness.  This was objected to by counsel for the defendant, the objection was sustained, and the plaintiff excepted.  The witness was then asked whether he knew the property that the maker of the note possessed during the early part of May and June, 1898.  This was objected to, the objection was sustained, and the plaintiff excepted.

I think it was error to sustain the objection to this evidence, as it was competent upon the question of the ability of the plaintiff to collect the note from the maker. After the death of the maker of the note, the plaintiff commenced an action against the indorser. That action was defended upon the ground that notice of nonpayment of the note had not been given to the indorser, and resulted in a judgment in favor of the indorser upon that ground. Whereupon the plaintiff brought this action against the bank to recover the damages that he sustained in consequence of the failure of the bank to give the indorser the proper notice of protest. There can be no question but that upon this proof the defendant was liable for the damages sustained by the plaintiff in consequence of the failure of the bank to give to the indorser proper notice of protest to make him liable upon his indorsement. The amount of the damage would depend upon the inability of the plaintiff to collect the note from the maker. The death of the maker shortly after the note became due precluded the plaintiff from commencing an action against him to recover the amount of the note. His estate had not been administered on, and there was therefore nobody from whom he could recover the amount of the note. The evidence was sufficient to justify a finding by the jury that the plaintiff was and had been unable to collect the amount from the maker, and that, in consequence of the negligent performance of its duty by the defendant, the plaintiff had sustained damage to the amount that he would have been able to collect from the indorser, had the bank performed its duty.

It seems to have been held by the court below that, to establish a cause of action, the plaintiff must prove the insolvency of the maker of the note. This, I think, was error. The cause of action was established by the failure of the defendant to perform the duty that it assumed when it undertook to collect the note; that is, of giving notice of the nonpayment to the indorser. In First Nat. Bank v. Fourth Nat. Bank, 77 N. Y. 320, 33 Am. Rep. 678, it is said:

"It is the duty of an agent who receives negotiable paper for collection, in case such paper is not paid, so to act as to secure and preserve the liability thereon of all the parties prior to his principal; and, if he fails in this duty, and thereby causes loss to his principal, he becomes liable for such loss."

And the court quotes from 1 Daniel on Negotiable Instruments, § 329:

"The measure of damages which the holder is entitled to recover of the bank, or other collecting agent, who has been guilty of negligence or default in respect to it, is the actual loss which has been suffered. The loss is prima facie the amount of the bill or note placed in its or his hands, but evidence is admissible to reduce it to a nominal sum."

And also from the opinion of the chancellor in the case of Allen v. Suydam, 20 Wend. 321, 32 Am. Dec. 555, as follows:

"Where there is a reasonable probability that the bill would have been accepted and paid if the agent had done his duty, or where, by the negligence of the agent, the liability of a drawer or indorser who was apparently able to pay the bill has been discharged, so that the owner of the bill cannot legally recover against such drawer or indorser, I admit, the agent, by whose negligence the loss has occurred, is prima facie liable for the whole amount thereof, with interest as damages, unless he is able to satisfy the court and

jury that the whole amount of the bill has not been actually lost to the owner in consequence of such negligence."

And the court then proceeds:

"In all these cases, the negligence of the agent being established, it is a question of damages, and the agent may show, notwithstanding his fault, that his principal has suffered no damages; and the recovery can then be for nominal damages only. He may show, in reduction of the damages, that, if he had used the greatest diligence, the bill would not have been accepted or paid, or that his principal holds collaterals, or has an effectual remedy against the prior parties to the bill."

There was evidence here from which the jury could find that the plaintiff was unable to collect his note from the maker, and that the defendant was liable for the amount of the note, which he had been unable to collect from the indorser because of the negligence of the defendant.

It follows that the judgment appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.