By the Court.
Bosworth, J.
This action was tried by a jury, before Mr. Justice Duer, at special term, and now comes before the court, on appeal from the judgment there rendered. It is urged on the appeal, .that the complaint does not state sufficient facts to constitute a cause of action ; that the judge, at the trial, erroneously refused to charge as requested ; that the defendant was prejudiced by the charge made; and that the verdict is against the weight of evidence.
The complaint states, that in the month of November, 1847, the plaintiff made his promissory note, dated Nov. 1st, 1847, by which he promised to pay, four months from its date, to the order of Robert Jones, ¡$2868 47. That it was made by Mm, and endorsed by Robert Jones, without consideration, and solely for the accommodation of James Jones & Co., and was delivered so endorsed, to James Jones & Co., for the specific purpose of being, by the latter, offered for discount at the Manhattan Company, and having the proceeds of it, if discounted, used to pay and take up other notes, before then endorsed by the plaintiff and Robert Jones, for the accommodation of James Jones & Co. That at this time, the plaintiff was not indebted to Robert Jones, or to James Jones & Co., or to either member of that firm. That James Jones & Co. offered the note for discount at the Manhattan Company, that it was not discounted, and thereafter James Jones & Co. obtained the note from the bank, placed it in a tin box in the safe of their store, for safe keeping, whereupon the plaintiff became entitled to the possession of the note. That' after it was so placed in the tin box, and in the same month of November, the defendant, without the knowledge or consent of James Jones & Go., or of either member of- that firm, wrongfully and illegally took the note from said tin box, and delivered it to one Gardner, and that thereupon defendant and Gardner, wrongfully, and without the knowledge or consent of the plaintiff, or of James Jones & Co., or of either member of that firm, “ converted and disposed of the same to their own use, and from thence, hitherto, have wrong *441 fully neglected and refused, and still do neglect and refuse to deliver the said note to the said plaintiff.” It prayed judgment for the amount and value of the said note, with such damages as the plaintiff has sustained by reason of the unlawful taking, detention, and conversion thereof, by the said defendants. Gardner, as well as Mathews, was made a party defendant to the action.
The defendants, answering separately, denied each allegation of the complaint, except the making of the note.
“ The said defendant Gardner alleges that in December, 1847, James Jones, one of the firm of James Jones & Co., requested Gardner, as a friendly act, to offer a note, which he believes to be the one in question, for discount, at the Bowery Bank, where said defendant had influence, that he consented to do so, that James Jones then produced the note in presence of Mathews, and delivered it to Gardner, that Gardner offered it for discount at said bank, that it was discounted there, and the proceeds paid to James Jones & Co., as follows, viz. $1225 was paid in cash by Gardner, to James Jones, and the balance was paid by Gardner to the said Mathews, with the said Jones’s direction and assent, the same firm being then indebted to Mathews in a larger amount than said balance ; that the note was so presented for discount, and its proceeds paid, as aforesaid, with the knowledge and assent of Decker.”
“ The said defendant Mathews, alleges that the said balance of the proceeds of the said note, was paid to him by said Gardner, as aforesaid, and that the said firm of James Jones & Go. were largely indebted to him at that time, and in an amount far exceeding said balance, and are still so indebted, that the said note was represented by James Jones & Co. to have been made and endorsed, to enable said firm to obtain money thereon, in any way, and from any source, the said firm being at that time insolvent, to the knowledge of said Decker, and Robert Jones, and each of them being liable for said firm.”
It will be observed, that the answer of Mathews does not allege any of the matters to be true, which are averred by Gardner, in respect to the discounting of the note at the Bowery Bank, or that it was done at the request of James Jones, or with *442 the knowledge of Jones, or of either member of his firm, or of the plaintiff.
The plaintiff replied to the answer, and denied each and every of the allegations of new matter contained therein. The testimony produced at the trial, covers some eighty-four printed pages, relates to many matters not pertinent to the issue, except as its details may affect the credibility of witnesses, and was introduced, and submitted to the jury, without a single objection to any part of it from either party. The judge, at the trial, among other'matters, charged the jury “that the first question, which it would be necessary for them to determine, was, whether the plaintiff Decker was the owner of the note at the time of its alleged conversion by the defendants, and that whether he was so or not, depended upon the facts, whether the note had been drawn by him for the general accommodation of James Jones, to be used by the latter in any manner, or for any purpose he might deem expedient, or had been drawn for the specific purpose of-being discounted at the Manhattan bank, and with the understanding that its proceeds, when so discounted, should be applied to the payment of notes, on which the plaintiff and Robert Jones were then liable. That if the jury were satisfied that the note had been delivered to James Jones, for the specific object, and with the understanding that had been stated, it became the property of the plaintiff, from the time it was rejected by the bank, and that although no evidence of its actual payment by him, had been given, he was entitled to recover its whole amount, with interest, in the present suit, if the defendants were guilty of the unlawful conversion that was charged, and the plaintiff had not by his subsequent conduct ratified and approved their acts. That upon the supposition that the plain- • tiff was the owner of the note, the defendant, Mathews, was certainly liable, if he had obtained possession of the note surreptitiously, without the knowledge of Jones, and Jones had not assented to its discount at the Bowery bank, and that he (the judge) was also of opinion, and so instructed the jury, that Mathews was liable, even should the jury believe that the note had been delivered to him by Jones himself, if at the time of such delivery he knew that the note belonged to Decker, to *443 whom Jones was bound to return it; and that Mathews was chargeable with this knowledge, if he knew that the note had been given for the sole purpose of being discounted by the Manhattan Bank.”
The judge submitted to the jury, four several questions of fact, to be determined by them, in addition to rendering a general verdict. The jury found a verdict for the plaintiff, against the defendant Mathews, for $2850 97, being for the amount of the note, with interest, and also found a verdict in favor of the defendant Gardner. Upon the four questions submitted, the jury found, as follows, viz.:
I. The jury believe that the plaintiff was the owner of the note, at the time of the alleged conversion. II. The jury believe, that the note was taken from the possession of James Jones, by the defendant, Mathews, without the knowledge and consent of the plaintiff, or of either of the parties in the firm of James Jones & Co., and that the proceeds were applied by the defendants to their own use, Gardner not being aware, at the time, of the circumstances under which the note was procured. III. The jury believe that it was known to the defendant Mathews before discount, that the note had been made for a specific purpose, which having failed, the note had become the property of the plaintiff. IV. The jury believe, that the plaintiff did not consent, expressly or otherwise, that the note in question should remain in bank for discount after it had been first presented.
The counsel for the appellant contends, that the note, according to the case made by the complaint, had no validity at the time of the alleged taking of it by Mathews, that up to that time it had not had any legal inception, that it was not a subject of theft, could not be made a donatio causa mortis, and was, in truth, a legal nonentity, a mere scrap of waste paper, having no value in fact or in law, and, therefore, that enough is not stated in the complaint, to constitute a cause of action.
The answer to this is, that it is the misuse, or unlawful disposition of the note, which constitutes the cause of action. The complaint avers, that the defendants have “ converted and disposed of the note to their own use.” This expression is equivalent to saying, that they have negotiated it for their own benefit. They *444 could not have disposed of it to their own use, without negotiating it for value received, or in discharge of a liability. If negotiated to a bond fide endorser, for value paid for it, it would be valid in his hands, and collectable at his suit. The complaint is, that they wrongfully took it, disposed of it, to their own use, and have, up to the commencement of the suit, neglected and refused to restore it to the plaintiff. This is sufficient to constitute a cause of action.
The plaintiff is entitled to retain his judgment, either upon the general verdict rendered, or upon the specific questions of fact, submitted to the jury, as found by them.
There are several adjudications directly in point, with only this difference, that in most of the cases reported, the plaintiff had taken up his note before bringing his action. It .has been held, that trover would lie, notwithstanding the plaintiff had repossessed himself of his note before suit brought. In Murray v. Burling, 10 J. R. 172, which was an action of trover by the maker of a note, the defendant was in the position of the defendant in this suit, except that, in that case, Burling received it from Swan, for whose accommodation it had been made, for the express purpose of procuring it to be discounted and giving the proceeds to Swan, for the plaintiff, instead of doing which, he immediately negotiated it to Minturn & Champlin, in payment of a debt, due to them from Burling & Swan, of which firm, the defendant Burling was a partner. Minturn & Champlin had the note discounted at the Mechanics’ Bank, and before bringing his action, the plaintiff paid and took it up. A non-suit was moved and granted, on the ground, that under the circumstances, stated on opening the cause, an action of trover could not be supported. On a motion to set aside the nonsuit, and for a new trial, the court said, “ the note went into the defendant’s • hands, as the plaintiff’s property, and it is the misuse, or disposition of it, contrary to orders, that constitutes the cause of action. It is no answer, to say, that the plaintiff has a remedy, by an action, for the money. There are many cases in which a party has an election of actions ; as if I intrust a man with my horse to ride, and he sells him, I may bring trover against him for the horse, or affirm the sale, and bring an action for the money. The defendant comes with an ill grace, to turn *445 the plaintiff round to another form of action, which may better accommodate his own views. It is a sound maxim, that no man shall found any claim or defence upon his own iniquity. There cannot be a doubt, that the defendant is liable in some form of action, and we see no objection to maintaining trover. The court are of opinion, that the nonsuit ought to be set aside.” Whatever those, who think the code crude, and ill adapted to the exigencies of a judicial system, equal and suited to the wants of the present day, may justly allege against some of its. provisions, it can fairly be said of it, that it saves a party, having a good cause of action, from being turned out of court, merely because his declaration is in the formal phraseology required in an action of trover, when it should have been in form, one for “ money had and received to the plaintiff’s use,” or vice versd.
The plaintiff has stated the actual facts of his case, and if they entitle him to recover, no embarrassment arises from having mistaken the form of action adapted to the particular case. In Murray v. Burling, the defendant came rightfully to the possession of the note, and the only wrong was, his unauthorized disposition of it. In this case, the taking of the note by Mathews, as well as his disposition of it, was tortious. His conduct, according to the verdict of the jury, was fraudulent throughout, and his case does not entitle him to the favor of the court. He has a right, however, to a just application of the settled rules of law to the facts of the case.
In Buck v. Kent (3d Ter. R. 99), Evans v. Kuyler (1 Barn. and Ad. 528), the plaintiff recovered in trover, for the conversion of notes, of which he was the maker: the notes had no inception until the misappropriation of them by the defendant. In Buck v. Kent the plaintiff had taken up his note before he brought his suit. It was contended in that case that the plaintiff should not have paid the note, but should have submitted to a suit and defeated a recovery. The court said that “ the defendant by disposing of the note determined its value. He considered it of value, and as such converted it to his own use, and the principles of law will justify the plaintiff in considering it in the same view, and will give to him a compensation for this conversion.”
In Ewart v. Kerr (2 McMullan 141), the court of appeals held *446 that “ where the thing converted is reduced to money in the hands of the defendant, the smallest measure of damages is always the amount so received with interest from the time of the. conversion.”
It appeared in this suit, that the note was discounted by the Bowery Bank, on the 4th of January, 1848, and $2,330 was paid by the bank on the discount of it. That the bank had sued Decker on the note, and on the 2d of November, 1849, recovered a verdict against him and other parties to the note for $2,629 61, the amount of the note and interest to that date. What had been done subsequently to the verdict was not shown. The principle applied in Ewart v. Kerr would make the defendant liable for the amount of the note and interest. A wrongdoer is not permitted, as between himself and one whose property he has converted to his own use, to profit by his own fraud. He cannot complain of being compelled to pay to the owner of the property, as much as he received for it in cash on converting it. In this case the recovery was for only the sum received by Mathews for the note, at the time he disposed of it, with interest, to the time of the verdict. In Evans v. Kuyler the plaintiff had not taken up his acceptance before suit brought, and yet he recovered the full amount of it.
If any third party had been the owner of this note at the time of its conversion, in a suit by such owner, the measure of damages would be, the amount of the note and interest (Ingall v. Lord, 1 Cow. 240; St. John v. O'Connell, 7 Porter 466; Powell v. Hyland, 2 L. & Equ. R. 362), unless insolvency of the maker, or payment, or the invalidity of the note, should be shown. The rule of damages stated to the jury, was the proper one in this case.
The requests to the judge to charge the jury, so far as they were material and not fully covered by the charge made, were met by the specific questions of fact submitted to the jury, all of which they found against the defendant. The exception taken to the charge, was to it as a whole. Such an exception does not bring up any particular remarks made by the judge, or any omission in such charge, unless the attention of the judge was directed to the point at the time. It is evident from the bearing of the charge, that the judge was not understood *447 to have instructed the jury, that if “ Mathews knew that the note had been given for the sole purpose of being discounted by the Manhattan Bank,” he was liable on that ground alone, even if they should not also find that the note was the property of the plaintiff, at the time it was taken by Mathews, and that it had been made for the specific purpose of having its proceeds applied tq taking up other notes, on which the plaintiff was an accommodation endorser.
The answer of the jury to the questions specially submitted to them, shows that the defendant has not been prejudiced from any omissions in respect to this point, (a)
The verdict cannot be said to be against the weight of evidence. Tt is true the witnesses on the one side expressly contra-' dieted some called on the other. But the jury have believed the plaintiff’s witnesses, and the question of their relative credibility was One which it was particularly their province to determine (Beforl v. Drake, 19 J. R. 68).
The judgment appealed from must be affirmed with costs.

 An exception to an entire charge is unavailable if any part of the charge is correct. The addition of the words, “ and to each part of it,” makes no difference, Jones v. Osgood, decided in the court of appeals, April 16, 1862.