HOBART F. ATKINSON, as RECEIVER OF THE ROCHESTER CITY BANK, RESPONDENT, *v.* THE ROCHESTER PRINTING COMPANY, APPELLANT.

*Transfer of the property of an insolvent bank* — 1882, *chap.* 409, *secs.* 186, 187.— *when the question of intent is unimportant—a transfer of seven drafts each less than, but the sum of which exceeds,* $1,000, *is forbidden* — *evidence of the opinions of a witness as to the value of commercial paper is not admissible* — *rule for determining its value.*

This action was brought by the receiver of the City Bank of Rochester, to recover the value of certain drafts, amounting in the aggregate to the sum of $3,180.32, transferred to the defendant in violation of sections 186 and 187 of chapter 409 of 1882, and with an intent of giving it a preference over other creditors of the bank. It appeared that the defendant made deposits in the bank on the 16th, 17th, 18th and 19th days of December, 1882, and that, at the close of business on the nineteenth, there was a balance due to it of $3,004.22; that during these days the bank was insolvent, and that this fact was known to its financial officers ; that, at a meeting of the directors on the evening of the nineteenth, it was resolved to discontinue business and apply for the appointment of a receiver ; that, on the morning of the twentieth, the cashier, knowing of the insolvency of the bank and of the action of the directors, telephoned for an officer of the defendant, and when he arrived, gave him certain drafts belonging to the bank, no one of which amounted to $1,000, but which amounted in all to $3,180.32, and took the defendant's check therefor, dated December nineteenth. The bank was not again opened for business. All the drafts so transferred were paid to the defendant, but one, upon which an action was brought by the defendant.

*Held*, that, as no resolution was ever passed by the board of directors authorizing the transfer of the drafts, and, as the transfer was not a payment "in specie or other current money or in bank bills" within the exception contained in the said section, the court did not err in refusing to submit to the jury the question of the intent with which the transfer was made.

That as drafts, amounting to $3,180.32, were all inclosed in one envelope and transferred at the same time, and as a single transaction, the fact that no one draft exceeded $1,000 was unimportant.

Upon the trial the defendant proved that it had no knowledge of the embarrassed condition of the bank when it made its deposits, and offered, but was not allowed, to prove, that it would not have made the deposits or left its money in the bank if it had known that the bank was insolvent, and asked to go to the jury upon the question of the fraud of the officers of the bank in obtaining and retaining the deposits, knowing the bank to be insolvent.

*Held*, that the evidence was properly excluded and the request properly denied, as the defendant was not following property deposited by him in the bank or

defending the possession of such property, the drafts transferred to it not being drafts which had been deposited by it in the bank.

*It seems*, that if they had been, a different question would have been presented

Upon the trial the defendant sought to show the value of the one draft which was not paid and upon which an action had been brought, by a witness who testified that his experience was teaching him something of the worth and worthlessness of commercial paper. He was then asked, but not allowed to answer, questions to show that in his opinion the draft was not worth thirty-five cents on the dollar.

*Held*, that it was proper to exclude this evidence; that the measure of damages in such cases is the nominal or face value of the paper, unless it be reduced by showing payment, insolvency or some fact to invalidate the paper.

The defendant offered in evidence the summons and complaint, and the answer served by the defendant in the action upon the draft. An objection to their admission was taken by the defendant and sustained by the court.

*Held*, that it erred in so doing, as the defendant had a right to show that a defense had been interposed, and that it was true, in order to prove the worthlessness of the draft.

APPEAL from a judgment entered upon a verdict directed by the court, in favor of the plaintiff, at the Monroe Circuit, and from an order of the Monroe Special Term, denying a motion for a new trial.

*J. & I. Van Voorhis* for the appellant.

*Smith & Briggs*, for the respondent.

HAIGHT, J.:

This action was brought, under the statute, to recover back the value of certain drafts, amounting in the aggregate to the sum of $3,180.32, which, it is claimed, were transferred to the defendant in violation of the statute and with the intent of giving a prefer-ence over other creditors of the bank of which the plaintiff is the receiver.

It appears, from the evidence taken upon the trial, that the defendant was a depositor in the City Bank, of Rochester, and that it made deposits in the bank on the 16th, 17th, 18th and 19th days of December, 1882, and that, on the close of business on the nineteenth, there was a balance due the defendant from the bank of $3,004.22; that during these days the bank was insolvent, and this fact was known to its financial officers; that on the evening of the nineteenth of December there was a meeting of its directors, who resolved to discontinue business and apply for a receiver; that, on

the morning of the twentieth the cashier, knowing of the insolvency and of the action of the directors, telephoned for an officer of the defendant, and, when that officer arrived at the bank, gave him certain drafts belonging to the bank, which amounted in the aggregate to $3,180.32, and took the defendant's check therefor, dated December nineteenth; that the bank was not again opened for business.    On the twentieth of December an action was commenced by the people for the dissolution of the corporation, and on the twenty-third of December judgment was entered in that action, dissolving the corporation on the ground of its insolvency, and appointing the plaintiff its receiver.    No resolution was ever passed by the board of directors authorizing the transfer of the drafts to the defendant.    No one draft amounted to $1,000, but altogether amounted to the sum before stated.    All of the drafts so transferred were paid to the defendant but one, which went to protest, and action was brought by the defendant to recover the amount thereof.    After the plaintiff was appointed receiver, and before knowledge of the fact of the transfer of these drafts, on the morning of the twentieth, he called upon the defendant for the amount of the overdraft, which was paid to him, and subsequently, on discovering the facts, demanded of the defendant the return of the drafts, less the amount repaid, which was refused. At the conclusion of the evidence, the court directed a verdict in favor of the plaintiff for the amount of the drafts, with interest, less the amount repaid as an overdraft.    The appellant took numerous exceptions to the rejection and admission of evidence and to the refusal to submit certain questions to the jury.

It is contended, in the first place, that the court erred in refusing to submit to the jury the question of the intent with which the drafts were transferred to the defendant.    The statute under which the action is brought provides as follows:

SECTION 186. " No conveyance, assignment or transfer not authorized by a previous resolution of its board of directors, shall be made by any such corporation of any of its real estate or any of its effects exceeding the value of one thousand dollars; but this section shall not apply to the issuing of promissory notes, or other evidences of debt, by the officers of the company in the transaction of its ordinary business, nor to payments in specie or other current

money, or in bank bills, made by such officers; nor shall it be construed to render void any conveyance, assignment or transfer in the hands of a purchaser for a valuable consideration and without notice."

SECTION 187. "No such conveyance, assignment or transfer, nor any payment made, judgment suffered, lien created, or security given by any such corporation when insolvent, or in contemplation of insolvency, with the intent of giving a preference to any particular creditor over other creditors of the company, shall be valid in law; and every person receiving by means of any such conveyance, assignment, transfer, lien, security or payment, any of the effects of the corporation shall be bound to account therefor to its creditors or stockholders, or their trustees, as the case shall require." (Laws of 1882, chap. 409.)

It will be observed that under the first section of the statute quoted an assignment or transfer of the effects of a bank exceeding the value of $1,000, not authorized by a previous resolution of the board of directors is prohibited except in the cases reserved by the statute. The defendant was not paid in specie or other current money, and did not part with any valuable consideration on the receipt of the drafts. It was consequently not within the exceptions, and we do not understand that under this section the question of intent is involved. The transfer of the drafts was one transaction. They were all inclosed in one envelope. The amount of them exceeded one thousand dollars. The fact that no one draft exceeded that sum is unimportant, for the statute evidently intended to protect the bank from the illegal and unauthorized acts of its officer or agent, and to limit the power of transfer of any of its effects. To hold otherwise would, in fact, nullify the statute and permit the cashier to transfer, in one body and to one person, every note, draft or other paper under $1,000 in value, held by the bank, even though the aggregate value exceeded $100,000.

The other section of the statute prohibits the conveyance, assignment, transfer or payment by the corporation, when insolvent or in contemplation of insolvency, with the intent of giving a preference to any particular creditor, etc. Under this section the question of intent is involved and ordinarily becomes a question for the jury. But in this case the evidence as to the transfer by

the cashier of the bank is undisputed, and the rule is that a party must intend the necessary consequences of his own act. It was conceded, upon the trial, that the bank was insolvent and had been for some days. The cashier knew this fact and of the action of the board of directors the evening before. The taking from the bank of the drafts in question and transferring them to the defendant, of necessity, preferred their claim over that of the other creditors. Whether or not the defendant knew of the insolvency of the bank or of the purpose of the cashier in transferring the drafts was immaterial. The evidence upon this subject being undisputed, the court properly refused to submit the questions to the jury. (*National Security Bank* v. *Price*, Receiver, 22 Federal Rep., 697.)

Upon the trial the defendant proved that it had no knowledge of the embarrassed condition of the bank when it made its deposits, and sought to prove that it would not have made the deposits or left its money in the bank if it had known that the bank was insolvent. This evidence was excluded and exception taken. The defendant also asked to go to the jury upon the question of the fraud of the officers of the bank in obtaining and retaining the defendant's deposits, knowing the bank to be insolvent, which was refused, and exception taken.

Undoubtedly a bank may, in a legal sense, be guilty of a fraud, and where one has been induced to part with property by the fraud of an officer thereof, the party defrauded may, upon discovery of the fraud, rescind the contract and recover the property or the proceeds thereof, unless it has come to the possession of a *bona fide* holder. (*Cragie* v. *Hadley*, 99 N. Y., 131; *The National Bank* v. *Insurance Co.*, 104 U. S. R., 54; *The People* v. *The City Bank of Rochester*, 96 N. Y., 32; *The Metropolitan National Bank* v *Loyd*, 90 id., 530.) But the difficulty with the appellant's position is that it was not following the property deposited in the City Bank, or defending the possession of such property. The drafts that were transferred to the defendant were not drafts deposited by it in the bank. Had they been, a different question would have been presented. The right of the defendant to restoration of the property deposited or to defend its possession is founded upon ownership. If a fraud was practiced upon the defendant to

induce it to make the deposit, the bank obtained no title to the deposit by reason of the fraud, and consequently the defendant would have the right to a restoration of that which belonged to it, and it could properly have defended its possession. The right to restoration also depends upon the identity of the property which it is sought to have restored, and the right to defend the possession of the property must also depend upon such identity. The drafts transferred to the defendant not being those previously owned by it and deposited in the City Bank, the trial court properly excluded the evidence offered, and refused to submit this branch of the case to the jury.

It is also claimed by the appellant that the plaintiff's statement in reference to the account of the bank, and the payment of the overdraft, was an account stated between the plaintiff and the defendant, and by that act the plaintiff's claim was settled. The plaintiff had recently been appointed the receiver of the corporation, and had had to acquaint himself with the affairs of the bank. As we have seen, the defendant's check, that was given upon the receipt of the drafts, was dated back to the nineteenth day of December, the day upon which the bank did business. The plaintiff, it appears, did not know at the time of the repayment of the overdraft the circumstances under which the drafts were transferred to the defendant. It consequently cannot be regarded as a settlement between the parties of the right of the plaintiff, as receiver, to have the drafts or their proceeds restored.

Among the drafts transferred to the defendant was one drawn on Loomis & Woodworth for $983.63, dated the 19th of December, 1882. This draft had been presented for payment by the defendant and payment refused. An action had been brought to recover the amount thereof, and an answer had been interposed by Loomis & Woodworth. Upon the trial the defendant sought to show the value of this draft by Mr. Pond, a witness. He was asked if he was acquainted with the value of commercial paper, and if he had owned and known of its being bought and sold; he answered that his experience was teaching him something of the worth and worthlessness of commercial paper. He was also asked whether, in his judgment, the draft was worth its face, at the time the defendant got it, under the circumstances which have since been disclosed.

This was objected to as immaterial and incompetent and the objection sustained. The defendant's counsel offered to show by the witness that he was acquainted with the value of such paper, and that this paper was not worth thirty-five cents on the dollar, in his opinion. This was also excluded.

The rule is that where promissory notes or commercial paper is converted, the measure of damages is the nominal or face value of the paper, unless it be reduced by showing payment, insolvency or some fact to invalidate the paper. (*Ingalls* v. *Lord*, 1 Cow., 240; *Allen* v. *Boyd*, 20 Wend., 321; *Decker* v. *Matthews*, 5 Sandf., 439; *Thayer* v. *Manley*, 8 Hun, 550.) It is undoubtedly proper to show the value of property by witnesses who are familiar with the property and its value; but as to choses in action, such as commercial paper, a different rule exists. The paper itself is of no value, but it is the evidence of debt or an agreement to pay. The question is, therefore, as to the ability to pay of the maker or person who, by the terms of the instrument, is to pay the same, and as to whether the instrument is valid. It would have been competent for the defendant to have shown the insolvency of Loomis & Woodworth, or that the draft had been paid, or that it was worthless by reason of a valid defense existing thereto. But, in the absence of such evidence, the presumption is that the paper was worth the amount called for by it. (*Potter* v. *The Merchants' Bank*, 28 N. Y., 641–655.)

It appeared, as we have seen, that Loomis & Woodworth had interposed an answer in the action brought by the defendant to recover the amount of the draft. The defendant offered the summons and complaint and answer in evidence. They were objected to, and the objection was sustained by the court and the defendant excepted.

We are inclined to the opinion that this evidence was competent. The defendant had the right to show that an action had been brought, that a defense had been interposed, what the defense was, and that it was true. If Loomis & Woodworth had any defense to the draft, such defense would necessarily be disclosed by the answer. After the defense had been disclosed the defendant might have shown that it was true, and that the draft was, consequently, worthless. It appearing that an answer had been interposed by Loomis &

Woodworth, they were bound by the defense set forth in their answer. The defendant in this action had. the right to show what the defense was for the purpose of establishing the fact that it was not attempting to show, or rely upon, defenses not actually made by the parties charged with its payment.

For these reasons the judgment should be reversed and a new trial granted, with costs to abide the event, unless the plaintiff stipulates within twenty days that the judgment may be reduced in the amount of the Loomis & Woodworth draft, to wit, $983.63, and interest thereon from December 19, 1882, in which event the judgment be so modified, and as so modified affirmed, without costs of this appeal to either party.

Bradley and Angle, JJ., concurred.

So ordered.