*BANK OF NEW HANOVER v WILLIAM R. KENAN.

*Banks -- Collection of Commercial Paper -- Agency.*

1. When a bank receives a check for collection and retains it for four days without presenting it for payment or making any effort for its collection or giving any notice to the depositor of its non-payment, the bank is liable if loss thereby ensues.

2. In such case a promise thereafter made by the depositor to pay to the bank the amount due by reason of the loss, is *nudum pactum.*

3. When paper is placed in the hands of a bank for collection, the bank must take the necessary steps to secure its prompt payment by presentation at maturity. If it is not paid, the bank, in order to fix the liability of the drawer, must have it protested and due notice of its dishonor given to the depositor. If it is not presented, the fact that if it had been presented it would not have been paid, does not excuse the liability of the bank.

4. When one voluntarily assumes an agency or trust to manage the interests of another, such agent will not be allowed to sacrifice the interests of his principal to his own; *Therefore,* when a bank received a check upon itself for collection, being at the same time a large creditor of the drawer, and failed without excuse to notify the depositor of the non-payment of the check ; *Held,* to be in law, negligence.

5. In such case the bank made the check its own and is fixed with its full amount.

(*Costin* v. *Rankin,* 3 Jones, 387 ; *Stowe* v *Bank of Cape Fear,* 3 Dev. 408, cited and approved.)

CIVIL ACTION, tried at Spring Term, 1876, of NEW HANOVER Superior Court, before *McKoy, J.*

The case is so fully considered by Mr. Justice BYNUM in delivering the opinion of this Court as to render any further statement unnecessary.

*Faircloth, J., being a stockholder in plaintiff bank did not sit at the hearing of the case.

There was judgment for the plaintiff and the defendant appealed.

*Messrs. Wright & Stedman* and *D. L. Russell* for plaintiff.
*Messrs. R. Strange* and *W. S. & D. J. Devane* for defendant.

BYNUM, J. The defendant had drawn from the plaintiff Bank a considerable amount exceeding his deposits, and the Bank called upon him to make good the deficit. The defendant had sold but not delivered to Moffit & Co. 300 barrels of rosin for $864, and to enable him to meet the demand of the Bank on the 6th of September, 1873, Moffit drew and delivered to the defendant his check upon the Bank for the purchase money of the rosin, payable on the 9th of September. This check the defendant offered to the Bank as a payment on the balance against him. The President of the Bank received the check and it was pinned to a deposit slip, which read thus, "Bank of New Hanover, deposited by W. R. Kenan, September 9th, 1863, currency——checks, $864.00."

The plaintiff in his replication to the answer, avers that the check was received for collection only, and the defendant insisted that it was received as a payment on his bank debt. How that was, was upon the evidence submitted to the jury and they found that the check was received for collection. The check was neither collected nor attempted to be by the Bank, and on the 13th of September, Moffit failed, and on the evening of that day the defendant received notice that the check had not been paid. By the admission of the plaintiff then, and the finding of the jury, the Bank received *for collection* this check, which was payable at its own counter, on the 9th of September and retained the same, without presenting it for payment or any effort for its collection or any notice to the defendant of its non-pay-

ment, until after the failure of Moffit, on the evening of the 13th of September, when the debt was lost. For that neglect the Bank is responsible. The Bank however insists that on the 15th of September and after the failure of Moffit, the defendant promised to pay the balance due it which the check was deposited to meet, and that that promise constituted a waiver of any claim on the Bank for its failure to collect the check. This defence is unavailing. There is no evidence of such a waiver. On the 15th of September the Bank requested the defendant to arrange the balance of his overdraw. He replied that "he would pay it," but immediately added, "but what about Moffit's check?" and in answer to that the President said he thought Moffit would arrange it during the day. So far from being a waiver, here was an express notice to the Bank, that it was looked to, and its answer was certainly evasive but did not deny its liability. But suppose the defendant had then and there, promised absolutely to pay the balance due the Bank. The express promise was only what the law implied without it; it neither added to the validity of the debt or his obligation to pay it. It was *nudum pactum ; vox et præterea nil.* Suppose the check had been placed in one Bank for collection, and the overdraw had been in another. The failure to collect by one Bank would have been no answer for a failure to pay in the other; and the payment of the balance due in one would have been no waiver of the other's liability for a neglect to collect. The fact that the whole transaction was in one Bank cannot change the relations or lessen the liability of the parties. We, therefore, put out of view the question of waiver and come to the main question, the liability of the Bank as an agent for the collection of the check. An important and profitable part of the regular business of banking is the collection of commercial paper. The advantages arising from business associations and the temporary use of the money for purposes of discount or exchange, form a val-

uable consideration for the undertaking. *Hall* v. *Bank of the State*, 3 Rich. 366; 1 Daniel on Neg. Instruments, 324-5. The Bank at which paper is made payable and at which it is deposited for collection, is the agent of the depositor to receive the money at its maturity. When a bill, note or check is placed in its hands for collection, it is the duty of the Bank to take the necessary steps to its prompt payment by making presentment for payment at maturity. If it be not then paid, the Bank must at once fix the liability of the drawer, by having it protested and by giving due notice of its dishonor to the depositor for collection. If the Bank fail in any of these duties it becomes immediately liable in damages to the holder or depositor. *West Branch Bank* v. *Fulmer*, 3 Barr. 399; *Ivory* v. *Bank of State*, 36 Mo. 475; 1 Daniel on Neg. Instruments, § 327; *Costin* v. *Rankin*, 3 Jones, 387. The agent must use such skill and diligence as are necessary to the due execution of his trust. This check was questionable and the Bank knew and acknowledged it to be so. Here then was superadded to its duty a spur to the most active vigilance in pressing the collection and giving prompt notice of its dishonor. If by this neglect or delay to give notice the payee was prevented from taking such immediate measures against the drawer as might possibly have secured the payee in some way or other, the Bank must be held responsible at least to the amount of the damage received. Nor is it an excuse that if the check had been presented for payment it would not have been paid or that there were not sufficient funds in Bank to meet it at maturity. That is not for the consideration of the agent. For it might well be, that had due notice been given the depositor, an immediate demand on Moffit with such other legal measures as their business relations might render advisable, would have led to the payment of the check.

"Our whole system of negotiable paper and its responsibilities, formed as it is by long experience admirably adap-

ted to the varied uses of commerce, rests upon the single principle of strict punctuality in demands, presentments and notices, as well as payments." *Allen* v. *Suydam*, 20 Wend. 321. Notice of non-payment of the check, should have been given on the 9th and at farthest on the 10th of September. Up to the 12th the rosin for which the check had been given remained on board the Bark *Osterlide*, in the port; $20,000 had been paid into the Bank and checked out again by Moffit, between the 6th and the 13th of September; Moffit himself testifies that had the defendant demanded payment of the check he should have been compelled to pay it or have failed some days sooner than the 13th, and it is evident that he was straining every nerve to keep up his credit as long as it was possible It is therefore possible, if not probable, that prompt notice by the Bank would have resulted in securing the debt or its payment.

The Bank is presented to us in another unfavorable attitude. It voluntarily assumed the agency to collect this check, when itself was a large creditor of Moffit; had secured most of his effects; was aware of his embarrassment and was making exertions to save itself from loss. The undertaking therefore to collect this debt, was antagonistic to the duties and purposes of the Bank, to save itself by seizing the only plank in the shipwreck. The natural if not the intentional result was that the interests of the defendant were pretermitted and he became the victim of censurable neglect. When the interests of the plaintiff and defendant conflict and the plaintiff voluntarily assumes the agency and trust to manage the interests of the other, the rule of good faith which is equity, will not allow the agent to sacrifice the interests of his principal to his own.

It was therefore the duty of the Court to have instructed the jury that the failure of the plaintiff from the 9th to the 13th of September, to notify the defendant of the non-payment of the check without any excuse therefor, was in law negli-

gence ; and that the only inquiry for them was, what amount of damages the defendant was entitled to recover.

The measure of damages which the holder is entitled to. recover of the Bank or collecting agent who has been guilty of negligence is the actual loss which has been suffered.. That loss, *prima facie*, is the full amount of the bill or note ; but evidence is admissible to reduce it to the actual loss. *Stowe* v. *Bank of Cape Fear*, 3 Dev. 408 ; 1 Daniel on Neg. Instr. § § 328–30. But this is the rule of general application only and is modified in its adaptation to a particular· class of cases of which the present is an example.

Here the Bank was the.creditor and the check was drawn on and was payable by the Bank—the agent. The undertaking of the Bank was to collect a check on itself. Of ne-- cessity it must be assumed that it was presented for payment, that is acted upon, at the time it was payable by the· . Bank.

If it was then accepted by the Bank, the amount of the check became a cash deposit to the credit of the defendant, paid out of the funds of Moffit or charged to his account with the Bank. If it was not accepted it was the duty of the agent to give notice to the holder and return the check. The Bank did neither. There can be no doubt that a Bank can so deal with a check that the law will imply an acceptance on its part. When the holder of a check presents it for payment the drawee has only a reasonable time to inspect. his accounts and ascertain whether he is in funds to meet the demand ; and such reasonable time is held not to exceed twenty-four hours ; after this lapse of time the holder has the right to know whether the check is accepted or dishonored. If the holder himself presents or sends the check to the Bank he must apply at the end of this reasonable time, to know whether it is accepted ; but if it is in the hands of· the Bank as a collecting agent, *it* must give the notice of acceptance or dishonor. The Bank was here both drawee and.

collecting agent ; it was fully cognizant of the state of its accounts with Moffit on the 9th of September ; it both received and paid out large deposits made by him up to the 13th of September and even the bill of lading for the rosin and the whole cargo went into the Bank to the credit of Moffit on the 8th of September ; on the 6th of September the Bank had possessed itself of all the valuable assets of Moffit so much so that the assignee of Moffit could pay nothing to the creditors ; and Bates the assistant cashier, testifies that "Moffit came to the Bank every day from the 6th to the 13th of September and sometimes three or four times a day and *made provision* for payment of his checks." Why was this check not provided for ? Moffit says he thought it had been and had been paid out of his deposits and had he known that it had not been paid he would have paid it or have failed sooner. Why was payment of the check not demanded and why was the defendant kept in ignorance of its non-payment until after the failure of Moffit became known to the world four days after it was payable ? Upon the plainest principles of justice these peculiar circumstances of wilful neglect of a known duty constitute a case of constructive acceptance of the check and fix the Bank for the full amount of it. The negligence of the Bank has made the check its own and the case is taken out of the general rule as to the measure of damages. *Allen* v. *Suydam*, 20 Wend. 321. 2 Dan'l on Neg. Instr. § 1619 and notes.

There is error.

PER CURIAM.                        Judgment reversed.