THE STANDARD TRUST COMPANY OF NEW YORK ET AL.
v. THE COMMERCIAL NATIONAL BANK.

(Filed 30 May, 1914.)

1. Trials—Banking—Nonsuit—Due Course of Mail—Presumptions —Evidence Conflicting—Questions for Jury.

Where the evidence discloses that a letter containing a check on a bank would have been received by the bank in due course of the mail and of its business on a certain day, at which time there were sufficient funds of the maker on deposit with the bank to meet it, and the plaintiff, suing the bank for the amount of the check, introduced a part of the defendant's answer in which it was alleged that the defendant "found the check in its mail" two days later, upon a motion to nonsuit, taking the evidence in the light most favorable to the plaintiff, the first date will be taken as the one on which the defendant received the check, the implied allegation of a later date in the answer which was introduced by plaintiff, not being conclusive upon him, but making a conflict in testimony which is for the jury to settle.

2. Trials—Evidence—Mailing Letter—Presumptions.

Evidence that a letter has been properly posted *prima facie* establishes the fact that it was received by the addressee in the usual course of the mails.

3. Banks—Deposits—Checking Arrangements—Parties.

It appeared that the plaintiff bank had an arrangement with its depositor that it would receive for deposit and as cash items, checks, payable to himself, and permit him to draw against them, and that the depositor had drawn out the full amount of the check in question. *Held,* sufficient evidence under the circumstances that the bank is the owner of the check so deposited and entitled to maintain an action thereon.

4. Banks—Rights of Check-holder—Bank as Agent and Drawee— Negligence of Bank and Constructive Acceptance of Check.

Where a bank has received for collection from another bank at a different place a check drawn on itself by one of the depositors, and assumes the agency to present and collect the same, it is bound to good faith and due diligence in the performance of its duty as such agent, and the fact that the bank presents the check for payment and causes it to be protested for insufficiency of funds to the credit of the drawee is some evidence of the agency to be considered by the jury. The court examines the evidence in this case and finds that there is sufficient to be submitted to the jury upon the question whether the defendant bank failed in its duty as agent, and whether its conduct showed a constructive acceptance of the check within the principle of *Bank v. Kenan,* 75 N. C., 340, and other authorities cited. The rights of a holder of a check against the drawee, and the bank upon which it is drawn, discussed incidentally by WALKER, J.

APPEAL by plaintiff from *Shaw, J.,* at October Term, 1913, of GUILFORD.

This action was brought to recover the amount of a check drawn by Sol N. Cone, at Greensboro, N. C., on 4 October, 1910, in favor of Latham, Alexander & Co. of the city of New York, for $5,000. The check was received in due time by the payee, indorsed to and deposited with the plaintiff Standard Trust Company to the credit of said payee, who immediately drew it out by checks against the amount so placed to its credit as a cash item, this being in accordance with an understanding previously existing between Latham, Alexander & Co. and the

plaintiff. Latham, Alexander & Co. did business with the Standard Trust Company under such circumstances as that all checks deposited by them were treated as cash items, *i. e.,* they could immediately draw against them. The check was, on the same day, 5 October, after having been indorsed "Pay to the order of Girard Trust Company, Philadelphia," by the Standard Trust Company of New York, mailed to the Girard Trust Company for "collection and credit." On 6 October the Girard Trust Company received this check, and after indorsing on it "Pay to the Central National Bank. Prior indorsements guaranteed. 6 October, 1910," sent it by hand to the Central National Bank of Philadelphia, which bank received it on 6 October, between the hours of 9 and 3, and after indorsing it "Pay to the order of any bank, banker, or trust company. Prior indorsements guaranteed. 6 October, 1910," it was mailed on 6 October to the defendant bank at Greensboro for "collection and remittance," the hour of mailing being about 5 p. m. The indorsements were all regular and in proper form. According to the due course of the mails, a letter mailed in Philadelphia at or about 5 p. m., 6 October, 1910, would leave Philadelphia on the Pennsylvania Railroad train No. 55, arriving at Washington, D. C., at 3:40 a. m., the 7th, and would come out of Washington to Greensboro on the Southern Railway train No. 35, leaving Washington at 9 a. m., and arriving at Greensboro at about 6 p. m., the 7th. On the dates in question, the regular mail connections were made, Southern 35 reaching Greensboro on the 7th at 6:24 p. m. So, according to the due course of the mails and the business of the defendant bank, this check arrived in Greensboro on the evening of 7 October and should have been in the bank to be handled by its cashier shortly after 8 o'clock on the morning of 8 October. At the opening of the bank on that morning, Sol N. Cone, the drawer of the check, had to his credit $19,432.52. The 8th was Saturday. Some time between 7 and 9 o'clock on the 8th, Cone attempted to commit suicide. He was then owing the defendant bank a note of $10,000; his attempt at suicide led to inquiry, which disclosed his insolvency. On 10 October (Monday), after having ascertained

Cone's financial condition, the defendant charged against his account the note of $10,000 due it. His deposit, at the opening of the bank on the 10th, was the same as it was on Saturday, to wit, $19,432.52. After charging this $10,000 against his account, the defendant bank, through its cashier, Boyles, presented the check to itself and duly protested it for nonpayment, because of an alleged insufficiency of funds, and returned it to the Central National Bank of Philadelphia by mail, where it was received on 11 October.

The defendant denied the receipt of the check on the 8th, but admits it was found in its mail and was in its possession on the 10th, which admission, taken in the light of the surrounding circumstances, put it in its hands, to its knowledge, before the opening of the bank.

There appears a second series of indorsements upon the check, which are thus accounted for: Upon its return to plaintiff, in New York, on the 13th, it was immediately sent back to Greensboro, through the Philadelphia banks, it being sent this last time, however, to the American Exchange Bank, instead of direct to defendant, upon which it was drawn. The facts in connection with this second series of indorsements are not now pertinent, further than they tend to corroborate and sustain plaintiff's contention as to the usual course of the mails, and the receipt of the check, on its first trip, the morning of the 8th, rather than the 10th, according to the contention of the defendant.

The court, at the close of the plaintiff's testimony, entered judgment of nonsuit, and the latter appealed.

*Manly, Hendren & Womble and T. S. Beall for plaintiff.*
*Brooks, Sapp & Williams for defendant.*

WALKER, J., after stating the case: It is now very common learning that where judgment of nonsuit is given upon the evidence the plaintiff is entitled to have the same construed most favorably for him (*Brittain v. Westall,* 135 N. C., 492; *Morton v. Lumber Co.,* 152 N. C., 54; *Johnston v. R. R.,* 163 N. C., 431); and we will so consider it throughout the discussion of the case.

We find this statement in the brief of plaintiff's counsel: "In the course of the debate upon the motion to nonsuit, the trial judge stated that but for the introduction by the plaintiff of a portion of defendant's answer, towit, 'Sec. 5. In answer to the allegations of article 5 of the complaint, the defendant avers that the check therein referred to was found by the defendant in its mail on the morning of 10 October,' he would have submitted to the jury for their determination the question whether the check arrived on the 8th or later, his view being that by introducing the above quoted declaration of the defendant, the presumption of receipt in due course of mails was met and rebutted as a matter of law. In other words, that the plaintiff offered, as a part of its evidence, testimony which disclosed, as a fact, the date of its receipt. With respect to the contention that, even if the check was not in hand until the 10th, the plaintiff was entitled to recover, because it had brought itself into such relationship with the defendant, by mailing it the check for collection, as to place the defendant under a duty to look after the interests of the plaintiff, and that duty was such as to prevent it from preferring itself, the judge made no affirmative statement as to his reasons for the nonsuit."

If the presiding judge was of the opinion that the statement in the fifth section of defendant's answer, even though it was introduced as evidence by the plaintiff, conclusively rebutted the *prima facie* presumption raised by the law, that the check had been received by the defendant on Saturday, 8 October, 1910, it was an erroneous view to take of the legal effect of that evidence. When it is shown that a letter has been "mailed," this establishes *prima facie* that it was received by the addressee in the usual course of the mails and his business, and when the latter introduces evidence that it was not in fact received, or not received at the time alleged, such testimony simply raises a conflict of evidence, on which it is the exclusive province of the jury to pass. In other words, the presumption of fact arising from the proof that the letter was mailed, together with the proof as to the schedule of the mails, and the course of the business of the addressee, are cir-

cumstances, when met by a denial of its receipt in due course, to be weighed by the jury with *all* the other evidence in determining the question whether the letter was actually received and as to the time of its receipt; and the fact that plaintiff introduced the rebutting evidence does not alter the case. He is not concluded thereby, but may show that the fact is otherwise, as a party is not always bound by the statement of his own witness. We said in *Model Mill Co. v. Webb,* 164 N. C., 87: "The City National Bank, it appears, mailed the letter with the draft and bill of lading to the defendant bank. This was evidence of its receipt by the latter, and raised a rebuttable presumption of the fact to be submitted to the jury, along with any evidence in the case tending to show that it was or was not in fact received. This is said to be founded upon another presumption that officers of the Postoffice Department will do their duty, or upon the better reason, the regularity and certainty with which, according to common experience, the mail is carried. It is, at least, evidence from which the jury may reasonably infer the fact that the mail matter was received in due course of transmission and delivery," citing 16 Cyc., 1065; *Bragaw v. Supreme Lodge,* 124 N. C., 154; *Coile v. Order of Commercial Travelers,* 161 N. C., 104, and other cases. While the reason given by counsel may have been the one upon which the nonsuit was based, we are not, of course, restricted to it, but may consider any other valid reason for the ruling. We infer from the record and the briefs that counsel are correct as to the ground upon which the judge placed his decision. But the *prima facie* presumption as to the time when the check was received was not rebutted by the introduction of the answer, and the question should have gone to the jury. *S. v. Wilkerson,* 164 N. C., 437, where the cases on this subject are cited; *Stewart v. Carpet Co.,* 138 N. C., 60; *Furniture Co. v. Express Co.,* 144 N. C., 644.

Plaintiff asserts ownership of the check by reason of its dealings with Latham, Alexander & Co., and without discussing this phase of the case, we merely state that the facts, as now pre-

sented, sustain the contention. This being so, it claims the
right to recover upon the check on either one of two grounds,
which are thus set forth in the brief of its counsel: "If, as a
fact, the check was in defendant bank on the morning of the
8th, then plaintiff would be entitled to a verdict upon these
grounds: (1) Because it was held without action by the de-
fendant for more than twenty-four hours, as it was not protested
until after banking hours on the 10th, the effect of which would
be to work an acceptance of the check by the defendant, so as to
make it liable on the check for its face; and (2) the defendant
failed in its duty as collecting agent to promptly present for
payment and pay the check or to promptly return it, as a result
of which it became liable in tort for damages, which, under the
facts of this particular case, would be the face of the check, it
appearing that Latham, Alexander & Co., the payee in the
check, and the person who deposited it with the plaintiff, re-
ceived cash on it, and went into bankruptcy soon thereafter,
never having had on deposit at any time after 5 October, with
the plaintiffs, any funds out of which the check could be real-
ized, so that plaintiff has lost the amount of the check, as Sol
N. Cone is insolvent."

A check is a bill of exchange, and may more particularly be
defined as a written order on a bank or banker, purporting to be
drawn against a deposit of funds, for the payment, at all events,
of a sum of money to a certain person therein named, or to him
or his order, or to bearer, and payable on demand. Norton on
Bills and Notes, 404; Revisal, sec. 2335. It will be convenient
here, without further discussion of the nature and qualities of
a check, to note the sections of our Negotiable Instrument Act
which may have application to the questions raised in the record,
and which are contained in Revisal, ch. 54:

"Sec. 2237. Where the instrument is made payable at a bank
it is equivalent to an order to the bank to pay the same for the
account of the principal debtor thereon."

"Sec. 2276. A bill of exchange is an unconditional order in
writing, addressed by one person to another, signed by the per-

son giving it, requiring the person to whom it is addressed to pay on demand or at a fixed or determinable future time a sum certain in money to order or to bearer."

"Sec. 2277. A bill of itself does not operate as an assignment of the funds in the hands of the drawee available for the payment thereof, and the drawee is not liable on the bill unless and until he accepts the same."

"Sec. 2286. The drawee is allowed twenty-four hours after presentment in which to decide whether or not he will accept the bill; but the acceptance, if given, dates as of the day of presentation."

"Sec. 2287. Where a drawee to whom a bill is delivered for acceptance destroys the same or refuses within twenty-four hours after such delivery, or within such other period as the holder may allow, to return the bill accepted or nonaccepted to the holder, he will be deemed to have accepted the same."

"Sec. 2335. A check is a bill of exchange drawn on a bank, payable on demand. Except as herein otherwise provided, the provisions of this chapter that are applicable to a bill of exchange payable on demand apply to a check."

"Sec. 2336. A check must be presented for payment within a reasonable time after its issue, or the drawer will be discharged from liability thereon to the extent of the loss caused by the delay."

"Sec. 2339. A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder unless and until it accepts or certifies the check."

Having these sections of the act before us, we can better understand the positions of the plaintiff as to the liability of the defendant upon this check. We have held that where a bank has refused to pay a check, the holder has no cause of action thereon against the bank, but must seek his remedy against the drawer, the bank being liable only to the drawer for its breach of promise to pay the check, there being an implied promise by the bank, arising from the deposit of his funds with it, that it will pay his checks when and as they are presented. If the bank

fails to perform this promise, it becomes liable to the drawer for the damages sustained by him on account of its refusal or failure to pay his check. But the holder of the check can only sue the drawer, and cannot sue the bank. The reason why the holder of the check is not permitted to sue the bank has been stated by the authorities to be, that there is no penalty between the holder and the bank until by certification of the check or the acceptance thereof, express or implied, or by any other act or conduct it has made itself directly liable to the holder. *Bank of Republic v. Millard,* 10 Wall. (U. S.), 152; *Bank v. Whitman,* 94 U. S., 343; *Bank v. Bank,* 118 N. C., 783; *Hawes v. Blackwell,* 107 N. C., 196.

Notwithstanding these principles have been recognized, there are courts which hold, in well considered opinions, that the bank should be held liable directly to the holder if it is notified that he has the check, or demand for its payment is made upon it, and it then has sufficient clear and unincumbered funds to the credit of the drawer with which to pay the check without any risk or embarrassment to itself. 2 Morse on Banks and Banking (4 Ed.), secs. 496, 497, 499 *et seq.;* Norton on Bills and Notes, p. 418 and note 50, and cases cited; 2 Daniel Neg. Instr. (6 Ed. by Calvert), secs. 1637, 1638, 1643, and notes.

At section 1638 and note 50, Daniel quotes from Morse on Banks and Banking, as follows: "It is true—and it is all that the cited cases decide—that before demand for payment no assignment exists, no obligation has been created, no privity has grown up, and the very right of the bank to pay may be taken away by any one of a great number of occurrences. But the act of presentment and demand, made before any one of these occurrences has taken place, is the act which creates at once, by usage of business and understanding of all concerned, the obligation, the privity, and the appropriation, or, at least, the right to claim an appropriation."

There is also strong and persuasive, if not convincing, authority for the position (*Wisner v. Bank, infra*) that under sections similar to 2286 and 2335 of our Negotiable Instrument Act, as above set out by us, if a bank retains a check more than twenty-

four hours after it has been presented for payment, it thereby impliedly accepts it, and becomes liable, on this acceptance, to the holder of the check. The argument is that, by section 2335, a check is defined to be a bill of exchange drawn on a bank and payable on demand; and, except as in said act otherwise provided, the provisions of the act applicable to bills of exchange payable on demand shall apply also to a check, and that it being nowhere in said act otherwise provided, the deduction is made that section 2286 applies to a check, and, therefore, if the latter is held more than the twenty-four hours after presentment to the bank for payment, it will constitute an implied acceptance, and that, so far as the liability of the bank to the holder is concerned, an implied acceptance of the check is as good as one expressed by a writing thereon.

The further contention is made, in aid of this reasoning, that by section 2339 of the act it recognized that a check may be the subject of acceptance, just like an ordinary bill of exchange, as well as of certification, for that section provides that "a check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder unless and until it *accepts* or certifies the check." (Italics ours.) This view is ably considered and held to be sound, in *Wisner v. First National Bank of Gallitzin,* 220 Pa., 21. We need not accept either of these views, or consider the legal effect of the mere presentment of the check, for we think that, in this case, there is evidence for the jury tending to show a constructive or implied acceptance of the check or bill by the bank, within the rule laid down by this Court in *Bank v. Kenan,* 76 N. C., 340. It is true that the facts of the two cases are not, in all respects, alike, but are sufficiently so to authorize a jury, as the evidence now appears, to draw an inference, in regard to acceptance, adverse to the defendant.

We have said that the facts in this case are not precisely like those in *Bank v. Kenan,* but they are alike in all essential particulars. There is one respect in which those in this case are more favorable to the plaintiff, and that is the conceded fact that Sol N. Cone was in a hopelessly insolvent condition, and

this should have aroused the bank to a greater sense of its duty and responsibility to the plaintiff. It should, therefore, have acted with promptness. It had undertaken to act as agent to present and collect the check, and this increased its obligation to the holder of the check, as it thus occupied a fiduciary relation, being also drawee. It is not frank in averring the time when it actually received the check, but is content with the bare statement that it was "found in its mail" on Monday, 10 October, 1910, when the presumption is that it was in the hands of its officers on the Saturday before, or on 8 October, 1910. The fact that it was *found* in the mail on the 10th does not prove conclusively that it did not arrive on the Saturday before. It was a fact within its knowledge when it was received, but it preferred to leave it in doubt, instead of candidly stating whether it arrived on Saturday or on Monday. It may have thought that if it came on Saturday, it might more surely fix its liability, and for this reason preferred to leave the matter in doubt or to avail itself of the implied suggestion that, as it was found in the mail on Monday, it was received on that day. It was within its ability to make this matter clear, and it should have done so. The fact was peculiarly within its knowledge, and its failure to make the truth in regard to it clearly appear is a circumstance against it. *Powell v. Strickland,* 163 N. C., at pp. 402, 403.

The defendant denies the agency in its answer, but there is evidence of it in the fact that it acted as such on Monday by presenting the check for payment, and, upon its own refusal to pay it, having it protested. Now, this was done—holding the check over from Saturday, as the jury may have found—when it had to the credit of the drawer a fund far in excess of the amount named in the check. Speaking in round numbers, there was to his credit on Saturday morning, at the opening of the bank, $19,400, and the same amount on Monday. When it received the check and assumed to act as agent in collecting it, the first step it took was to take care of its own interests by charging a note of $10,000 it held against Cone to his account, still leaving a balance of $9,400 to his credit, which was far

more than sufficient to pay the check. It avers in its answer that out of the said balance of $9,400 it paid other checks of Cone drawn on it, which were presented before the check.in suit, and upon the principle of "first come, first served," it was entitled to do so; but of this there was no evidence, and if there were any, it would be for the jury and not for the court to pass upon. But even this averment seems to be based upon its statement in the answer, put in evidence by the plaintiff, that the check was "found" in its mail on Monday, whereas we must proceed upon the assumption of the *fact* that it was received on Saturday, as we are dealing with a nonsuit, and all evidence is to be regarded favorably for the plaintiff, and every fact which it reasonably tends to prove must be taken to be established. It may be that other checks of Cone came into the bank on Monday before the check in suit was found, and for that reason were paid first; but if the $5,000 check was received Saturday and the other checks Monday, the miller's rule set up by the defendant would not apply. Was the defendant, therefore, as agent and drawee, acting in good faith with the plaintiff in handling its check? As the evidence is now to be considered by us, the jury might well have found, if the case had been submitted to them, that it was not, and if the facts are not, as the jury could find them to be upon this evidence, it is defendant's misfortune that the case stopped short of full proof on both sides.

In *Bank v. Kenan, supra,* the Court, by *Justice Bynum,* said: "The bank is presented to us in another unfavorable attitude. It voluntarily assumed the agency to collect this check, when itself was a large creditor of Moffitt; had secured most of his effects; was aware of his embarrassment, and was making exertions to save itself from loss. The undertaking, therefore, to collect this debt was antagonistic to the duties and purposes of the bank, to save itself by seizing the only plank in the shipwreck. The natural if not the intentional result was that the interests of the defendant were pretermitted and he became the victim of censurable neglect. When the interests of the plaintiff and defendant conflict, and.the plaintiff voluntarily assumes the

agency and trust to manage the interests of the other, the rule of good faith, which is equity, will not allow the agent to sacrifice the interests of his principal to his own. · . . . Here the bank was the creditor, and the check was drawn on and was payable by the bank, the agent. The undertaking of the bank was to collect a check on itself. Of necessity it must be assumed that it was presented for payment, that is, acted upon, at the time it was payable by the bank. . . . Upon the plainest principles of justice these peculiar circumstances of willful neglect of a known duty constitute a case of constructive acceptance of the check and fix the bank for the full amount of it. The negligence of the bank has made the check its own, and the case is taken out of the general rule as to the measure of damages. *Allen v. Suydam,* 20 Wend., 321; 2 Danl. Neg. Instr., sec. 1619 and notes." The doctrine of this case is somewhat more broadly stated in 2 Morse on Banks and Banking (4 Ed.), ch. 34, especially secs. 499 to 511.

It may be, when the evidence is fully developed, that it will present a very different aspect from that now in the record, and we may not be required to give it the same kind of construction as we are bound to do upon a nonsuit. The plaintiff, in that event, will have to take and carry the burden of the issue and prove its case by a preponderance of the evidence, and the jury will find the facts and apply the law under instructions from the court. The defendant may be able to show clearly, or, at least, to have the jury find, that it has fully discharged its duty to the plaintiff; that it received the check on Monday, retained enough out of the funds of Cone then in the bank to pay his $10,000 note held by it, applied the balance *pro tanto* to other checks presented before the plaintiffs, and when the latter was received, there were not sufficient funds in hand to pay it, which would assuredly present a much stronger case for it.

As to plaintiff's being the owner of the check, we are of the opinion that, as the evidence is now stated, there is sufficient to warrant a finding by the jury on that question in favor of the plaintiff; but it may be presented in a stronger light hereafter.

We have not gone fully into a discussion of the evidence, as

to either question, lest we might, thereby, prejudice one or the other party at the next trial. When all the facts are before us, we may then more clearly define the rights of the parties and declare for or against the liability of the defendant on the check.

The nonsuit will be set aside, and a new trial given.

New trial.