BRYANT GREEN ET AL. v. W. H. RUFFIN AND R. H. STRICKLAND.

(Filed 24 March, 1920.)

1. **Nonsuit—Pleadings—Evidence—Bills, and Notes—Collateral—Equity Subrogation—Mortgages.**

The plaintiff executed his note secured by mortgage, to a corporation in which the defendant was an officer, which was placed as collateral by the payee corporation to a note, endorsed by the defendant, given

by the payee corporation to another, and, thereafter, the payee corporation obtained a renewal note from the plaintiff upon agreement that the first would be cancelled. The maker corporation made several payments on its notes, among other things, with the proceeds of the sale of lands under plaintiff's mortgage, and the purchaser at the sale reconveyed the lands to the plaintiff, and in this suit the plaintiff seeks to enjoin the foreclosure of the second mortgage by the defendant officer of the maker corporation, who had then paid off the balance due on the note, and who held the collateral, including plaintiff's second note. There was evidence tending to show that defendant knew of the agreement between the plaintiff and his corporation, and plaintiff introduced a paragraph of the answer alleging the defendant was a transferee of the plaintiff's note "for value and without notice." *Held*, the case should have been submitted to the jury, there being evidence, notwithstanding the answer, that defendant was a purchaser with notice or knowledge ; and, *Held, further*, that the defendant, under the equitable doctrine of subrogation, could have no further right than his corporation, as a holder of the plaintiff's note given in renewal.

### 2. Bills and Notes—Collaterals—Indorser—Purchase—Benefits—Estoppel.

Where a second note and mortgage has been given in renewal of the first, under agreement that the latter should be cancelled, which was not done, and the mortgaged premises has been sold under the first, and the proceeds applied to a note which the payee had given to another, an indorser on the payee's note, who has paid off the balance and holds the collateral, may not retain the benefits he has received under the mortgage sale, and repudiate the obligations of the transaction as to the renewal note, of which he had knowledge at the time.

### 3. Equity—Subrogation—Superior Equities—Legal Rights.

A party may not invoke the equitable doctrine of subrogation when its application would work injustice to the rights of those having superior equities, or would operate to defeat a legal right.

APPEAL by defendants from *Guion, J.,* at the November Term, 1919, of FRANKLIN.

This is an action to restrain a sale of the land in controversy under a mortgage. The facts are as follows:

R. H. Strickland, the defendant in interest, while a stockholder and vice president of the Hill Livestock Company, endorsed a note of his company's made payable to the American Agricultural & Chemical Company in the sum of $10,000. After this note matured and while collection was being pressed thereon, said livestock company, as an inducement for extension of the payment, deposited as collateral security certain notes and securities of its concern amounting to a large sum. Among the collateral so deposited was a note and deed of trust for $1,000 given Bryant Green, one of the plaintiffs. When the Green note matured he was induced by the livestock company to execute a renewal note in payment of the original, which was likewise secured by deed of trust,

conveying the identical lands that were conveyed as security to the first note. At the time of the execution of said renewal note and deed of trust Green was assured by Hill, president of the livestock company, that his first note would be marked paid, and the deed of trust secured by same would be duly canceled of record. After obtaining the renewal note and deed of trust of the livestock company, Hill represented to the First National Bank of Louisburg, N. C., that the first or original note had been deposited as collateral to a note given to the chemical company; that said original note was then past due and the chemical company was demanding its payment in cash; that the proceeds of the renewal note, which said livestock company desired to sell said bank, would be used to pay the original note, and said bank bought the renewal note and paid cash therefor. The money so received from the sale of said renewal note was paid to the chemical company, who held the original note and credited thereon. The livestock company from time to time made payments on its note due the chemical company, aggregating about eight thousand dollars, and judgment was obtained for the balance due thereon of about two thousand dollars, against the livestock company, R. H. Strickland, and others. Strickland paid the judgment and took over the collateral, which amounted to several thousand dollars. The lands conveyed in the two deeds of trust by Green were sold under the terms of the second deed of trust, and the Franklin Land Company became the purchaser. Said land company subsequently conveyed said lands to Green, the original owner. Six months after the foreclosure sale, made under the second deed of trust, the defendant Strickland attempted to foreclose under the first deed of trust, and this action is to restrain the sale.

K. P. Hill testified: "I was president of the Hill Livestock Company, and Mr. R. H. Strickland was vice president of said company. In the spring of 1914 the Hill Livestock Company executed its note to the American Agricultural & Chemical Company in the sum of about $10,000, for certain fertilizers purchased, and Mr. Strickland, J. P. Hill, and myself endorsed said note, which was delivered to the said chemical company. In the latter part of 1915, the note so executed by the Hill Livestock Company and endorsed by Mr. Strickland and myself was turned over to Mr. Jim Pou of Raleigh for collection. We went to see Mr. Pou and carried a large batch of papers, including the Green note, and delivered them as collateral security to the company's note. In January, 1916, we induced Bryant Green to give us a second note and mortgage in renewal of the first note executed in April, 1915, and deposited with Mr. Pou, under the agreement that his first note should be obtained and delivered up to him for cancellation. I discounted this second note at the First National Bank with the understanding that I

would send the proceeds thereof to Mr. Pou to be applied on the note to which Green's first. note was deposited as collateral, and obtain said first note and have the deed of trust securing same canceled of record. In accordance with this agreement I sent the money, obtained from the bank on the second note, to Mr. Pou to be applied on the chemical company's note. From time to time we paid about $8,000 on the chemical company's note, which left about $2,000 due thereon. I neglected to get the first Green note and deed of trust. Mr. Strickland knew about these transactions and kept up with the payments that were made upon the chemical company's note."

The plaintiff also introduced a part of the answer of the defendant Strickland, which is as follows:

"That he ceased to be a stockholder in the Hill Livestock Company on 27 August, 1914; that he endorsed the note to the Agricultural Chemical Company for a large amount, and judgment was rendered against him, and being solvent he paid said judgment to the amount of $2,500, and said judgment and securities were transferred to this defendant for value and without notice."

At the conclusion of the evidence his Honor entered judgment of nonsuit and the plaintiff excepted and appealed.

The defendant Ruffin has no interest in this controversy except to perform his duties of trustee in the deed of trust under the directions· of the court.

*W. H. Yarborough and Ben T. Holden for appellants.*
*W. M. Person and N. Y. Gulley for appellees.*

ALLEN, J. The witness Hill testified that the second note and mortgage were executed as a renewal of the first note and mortgage, which had been deposited with the chemical company as collateral, and under an agreement that the first note and mortgage, under which the defendant Strickland is asking that the land be sold, would be delivered up and canceled, and that the proceeds derived from discounting the second note and mortgage were actually paid to the chemical company in reduction of the liability of the defendant Strickland thereon as indorser.

He also testified: "Mr. Strickland knew about these transactions, and kept up with payments that were made upon the chemical company's note."

It therefore appears from this evidence that Strickland knew of the agreement to cancel the first note and mortgage, and that he received the benefit of the contract by the application of the proceeds of the second note and mortgage to the note of the chemical company, and he will not now be permitted to receive the benefits and repudiate the obligations of the transaction. See *Wilkins-Ricks Co. v. Welch,* at this term.

It is true that the plaintiff weakened the force of this evidence by

introducing a part of the answer of the defendant in which he alleged that the collateral securities held by the chemical company were transferred to him "for value and without notice," but this merely presented the case of contradictory evidence, and did not justify entering a judgment of nonsuit.

This precise question was presented in *Trust Co. v. Bank*, 166 N. C., 116, in which the plaintiff introduced evidence that a check was duly mailed and relied upon the presumption that it was received on a certain date, and after doing so introduced a part of the answer of the defendant, which tended to rebut this presumption.

A judgment of nonsuit was entered, the court being of opinion that the presumption was rebutted by the introduction of the answer by the defendant, but this Court set aside the judgment of nonsuit, the Court saying: "The fact that plaintiff introduced the rebutting evidence does not alter the case. It is not concluded thereby, but may show that the fact is otherwise, as a party is not always bound by the statement of his own witness. The *prima facie* presumption as to the time when the check was received was not rebutted by the introduction of the answer, and the question should have gone to the jury."

Again, the defendant Strickland, in order to assert his rights under the first note and mortgage, must invoke the equitable doctrine of subrogation, which "will not be permitted where it will work injustice to the rights of those having superior equities or where it will operate to defeat a legal right." 25 R. C. L., 1321.

His right to subrogation, if any, is the right to be subrogated to the rights of the chemical company in the collateral security, and as it appears from this evidence the plaintiff Green, who was the debtor in the collateral security, furnished the money, and it was actually paid to the chemical company, that company could not hold the securities as against the plaintiff Green, and if so, Strickland could not do so by subrogation.

In our opinion the case is one which ought to be submitted to a jury.

Reversed.