LEON DAVES AND GLADYS DAVES v. UNION MUTUAL INSURANCE COMPANY OF PROVIDENCE

No. 6829SC378

(Filed 20 November 1968)

**1. Trial § 21— motion for nonsuit — consideration of evidence**

On motion for nonsuit, plaintiff's evidence is to be taken as true and all the evidence must be considered in the light most favorable to plaintiff, giving him the benefit of every fact and inference of fact pertaining to the issues which may be reasonably deduced from the evidence.

**2. Trial § 21— motion for nonsuit — consideration of defendant's evidence**

On motion for nonsuit, defendant's evidence is to be considered only to the extent that it is not in conflict with plaintiff's evidence and tends to make clear or explain plaintiff's evidence.

**3. Evidence § 4— evidence that letter mailed properly — presumption**

Evidence that a letter was properly mailed *prima facie* establishes that it was received by the addressee in the usual course of the mail; where the addressee introduces evidence that it was not in fact received, a jury question arises as to whether the letter was actually received.

**4. Insurance §§ 129, 136—    notice of cancellation mailed — receipt of notice — jury question**

In an action on a fire insurance policy, defendant insurer's motion for nonsuit was properly denied where plaintiffs' evidence tended to show that the loss resulting from the destruction by fire of plaintiffs' house and its contents was covered by a fire insurance policy issued by defendant and that plaintiffs had received no notice of cancellation of the policy prior to the fire, notwithstanding the parties stipulated that defendant insurer had properly mailed a notice of cancellation to plaintiffs several months before the fire occurred.

**5. Insurance §§ 128, 130—    waiver of written proof of loss — sufficiency of allegations and proof**

In an action on a fire policy, plaintiffs' allegations and evidence that they notified defendant insurer's agent of the fire loss, that defendant's adjuster visited the scene of the fire, took pictures, made measurements and told plaintiffs to submit a list of items destroyed, that plaintiffs submitted such a list, and that the adjuster later informed plaintiffs that the policy had been cancelled before the fire occurred *are held* sufficient to justify the submission of issues as to whether defendant waived the policy requirement of written proof of loss and whether defendant was estopped to plead lack of such notice.

APPEAL by defendant from *Thornburg, J.,* April 1968 Term, TRANSYLVANIA Superior Court.

The defendant issued a policy of fire insurance to the plaintiffs who are husband and wife on 25 August 1965 to cover the plaintiffs' house and its contents. The policy was to expire in three years with the premium being paid in yearly installments. After the policy was issued and received by the plaintiffs, the general agent for the defendant, Mullinax, Bost, and Bogle in Kannapolis, North Carolina, upon the recommendation of their underwriter, decided that the property was insured in excess of its value. This was confirmed by the local agent from whom the plaintiff purchased the insurance. On 22 November 1965 a notice was mailed by the general agent to the plaintiffs advising them that their policy of insurance was being canceled as of 2 December 1965. It was stipulated by the parties that this notice was placed in the United States mail at Kannapolis, North Carolina. A receipt for the letter containing the cancellation notice was procured from the United States Post Office and was attached to the stipulation. On 8 December 1965 a letter was sent by the general agent to the local agent stating that at that time they had received no evidence of cancellation and requesting that he send such; however, there was no evidence that the local agent had taken any action toward canceling the policy held by the plaintiffs. The plaintiffs denied that they received any notice of cancellation.

They stated that sometime in December of 1965 they received a notice entitled "Endorsement", and stating:

> "This endorsement, effective 12/2/65 (12:01 A.M., standard time), forms a part of policy No. 38-13652 issued to Leon & Gladys Daves by Union Mutual Insurance Company.

> It is understood and agreed that there should be an additional premium of $9.87 to revise the cancellation to $42.00 in lieu of $51.87.

> Inception — 8/25/65
> Expiration 8/25/68
> First Pay.   $ 57.00
> POthers         57.00
>              $171.00"

The plaintiffs testified that they understood this "endorsement" to mean that they owed an additional $9.87 on the policy. That the husband took the "endorsement" to the agent who sold them the insurance. The agent told him that there was an additional $9.87 owing on the policy. However, the plaintiff husband was told that a dividend was owed to him from an earlier policy and that this dividend would be used to pay off this additional amount. It appears that there were no further transactions between the plaintiffs and the insurance company until March of 1966. The plaintiffs' house burned on 20 March 1966. On 21 March 1966, the husband went to his local agent and informed him of the fire. He was told that they would have to get an adjuster to view the loss. It was one to two weeks before the adjuster came. The adjuster measured the dimensions of the house, made pictures of the burned contents, and asked the plaintiffs to make a list of the burned contents of the house, giving the actual cost price as near as possible. Plaintiffs were told to take this list to the office of the local agent. The plaintiffs made this list as requested and turned it in to the local agent the next day. Some weeks after this first meeting, the adjuster for the defendant met with the male plaintiff and advised him that his company had canceled plaintiffs' policy of insurance before the fire occurred. A demand for payment was made upon the defendant by plaintiffs. The defendant has refused to make payment.

At the time of the trial, the Johnson-Kilpatrick Agency from whom the plaintiffs purchased their insurance had been purchased by Clifton Sneeden and was then called the "Insurance Service of Brevard". Sneeden testified that he took control of the records of the Johnson-Kilpatrick Agency and that these included records per-

taining to the plaintiffs. He stated that it was the normal practice for the agent to receive a notice of cancellation when a customer's policy was being canceled, but that he had found no such notice in the plaintiffs' file.

At the close of the plaintiffs' evidence and at the close of all the evidence the defendant demurred to the evidence and moved for motion as of nonsuit. These motions were denied.

The following issues were submitted to the jury:

1. Did the defendant issue a policy of fire insurance to the plaintiffs on August 25, 1965, as alleged in the Complaint?

2. Was the said policy in full force and effect on March 20, 1966, at the time of the loss alleged in the Complaint?

3. Did the plaintiffs give immediate written notice to the defendant of a loss occurring on March 20, 1966, as required by the said policy?

4. Did the plaintiffs render to the defendant a Proof of Loss signed and sworn to by the insured concerning the said loss of March 20, 1966, as required by the said policy?

5. Is the defendant estopped to rely on plaintiffs' failure to file written notice or proof of loss concerning their loss of March 20, 1966, or did defendant waive its right to require plaintiffs to file written notice or proof of loss concerning their loss of March 20, 1966, as alleged in the Reply?

6. What amount, if any, are the plaintiffs entitled to recover of the defendant?

The jury found that the policy of insurance was issued by the defendant and that it was in force at the time of the fire. They found that the plaintiffs had not filed written notice of the loss and a sworn proof of loss as required by the terms of the policy. However, by their answer to the fifth issue, the jury found that the defendant was estopped to rely on plaintiffs' failure to file written notice and proof of loss, or defendant had waived its right to require written notice and proof of loss. The plaintiffs were awarded damages in the sum of $3,500.

*Ramsey and White by William R. White for plaintiff appellees.*

*Williams, Williams and Morris by William C. Morris for defendant appellant.*

MORRIS, J.

The defendant's sole contention is that the trial judge should have allowed its motion for nonsuit. Its argument is based on two contentions: one, that the plaintiffs did not comply with the terms of the policy in that they did not file written notice or a sworn proof of loss; and, two, that its uncontradicted evidence shows that the policy of insurance was canceled as of 2 December 1965.

[1-3]　Perhaps the rule of law most often stated in North Carolina is that "On a motion to nonsuit, plaintiff's evidence is to be taken as true, and all the evidence must be considered in the light most favorable to plaintiff, giving him the benefit of every fact and inference of fact pertaining to the issues, which may be reasonably deduced from the evidence. Contradictions, even in plaintiff's evidence, must be resolved in his favor." 7 Strong, N. C. Index 2d, Trial, § 21, p. 294. Defendant's evidence which tends to impeach or contradict the plaintiff's evidence is not to be considered and defendant's evidence is to be considered only to the extent that it is not in conflict with the plaintiff's evidence and tends to make clear or explain plaintiff's evidence. 7 Strong, N. C. Index 2d, Trial, § 21. The defendant argues that since its evidence showing that the notice of cancellation was properly mailed was uncontradicted, this should have been considered in passing on the motion for nonsuit. Defendant contends that evidence showing that the notice of cancellation was properly mailed raises the presumption that it was received and for this reason the motion for nonsuit should have been allowed. For this proposition the following is quoted in its brief:

".　. . When the evidence shows that a letter has been committed to the post office or other depository from which letters are regularly delivered, properly stamped, and correctly addressed to the place of residence of the person for whom it is intended, it will be presumed that the sendee received the letter in the due course of mail. . . ." *Eagles v. R. R.,* 184 N.C. 66, 113 S.E. 512.

The above is clearly stated by the Supreme Court in the case cited. However, for its true meaning it must be read in context. The presumption is not conclusive as the defendant argues in his brief. In the sentence following the above quotation the Court quotes from an earlier North Carolina case:

"When it is shown that a letter has been 'mailed,' this establishes *prima facie* that it was received by the addressee in the usual course of the mails and his business, and when the latter introduces evidence that it was not in fact received, or not re-

ceived at the time alleged, such testimony simply raises a conflict of evidence, on which it is the exclusive province of the jury to pass." *Trust Co. v. Bank,* 166 N.C. 112, 81 S.E. 1074.

[4] In the present case the evidence shows that the plaintiffs purchased a policy of insurance in August of 1965 which was to run for three years; that they did not receive the notice of cancellation; that they understood the "endorsement" which was received sometime in December of 1965 to mean that they owed an additional $9.87 on the policy. They stated that the local agent told them he would pay this as they were due a dividend on an old policy. The witness Sneeden stated that he had bought out the agency with which the plaintiffs dealt; that he received the plaintiffs' file along with other records in this transaction and that he found no notice of cancellation in the file. He stated that ordinarily the local agent would receive such a notice. The defendant Company offered evidence that it had mailed the plaintiffs a notice of cancellation, and, in fact, the plaintiffs stipulated that such notice had been mailed. The defendant introduced a postal receipt which, as stipulated to by the plaintiffs, showed that the notice of cancellation had been mailed. This testimony raises a conflict of evidence. The motion for nonsuit was, therefore, properly denied.

[5] The defendant argues that the plaintiffs failed to file written notice of the loss and proof of loss as required by the policy. It is argued that the plaintiffs' allegations do not raise the question of waiver, that they only raise the question of whether the defendant is estopped to raise these defenses, and that the evidence is insufficient to allow the question of estoppel to be submitted to the jury; therefore, because plaintiffs have not complied with the terms of the policy, nonsuit should have been granted. The pertinent allegations are as follows:

". . . plaintiffs allege that because of the actions on the part of the agents and employees of the defendant, that the defendant is estopped to plead lack of notice. That shortly after the fire, as alleged in the complaint, agents, servants and employees of the defendant contacted these plaintiffs and went to the site of the destroyed home, measured the size of the dwelling, took pictures of the destroyed home and requested the plaintiffs to furnish to the agent of the defendant in Brevard a list of the contents destroyed in said fire, and notified these plaintiffs that they would contact them again in the near future. That these replying plaintiffs took the list of contents to the agent in Brevard and were never thereafter contacted by

the defendant. That because of these actions on the part of the agents, servants and employees of the defendant, the defendant is estopped to plead lack of notice."

We feel that these allegations properly raised the question of waiver. 1 McIntosh, N. C. Practice 2d, § 999, p. 556, states:

"The court will grant relief, either legal or equitable, according to the facts alleged and proved, though there be no formal prayer for relief, or though relief of another kind be demanded. The court has stated it thus: 'In numerous and repeated decisions of this Court we have held that neither a particular form of statement nor a special prayer for relief should be allowed as determinative or controlling, but rights are declared and justice administered on the facts which are alleged and properly established.' The statement found in some cases that 'A complaint proceeding upon one theory will not authorize a recovery upon another and independent theory' has no reference to the theory indicated in the prayer for relief, but merely prohibits invocation of a theory not supported by the facts alleged. That is, a party cannot recover upon a theory or cause of action not supported by the facts, regardless of the actual existence of *other* facts not alleged which he might have been able to prove.

It is clear that upon demurrer for failure to state a cause of action, or upon motion for nonsuit, the theory of recovery is unimportant except to the extent that it must be determined that the facts alleged, or alleged and proved, justify recovery on some theory."

In *Laughinghouse v. Insurance Co.*, 200 N.C. 434, 157 S.E. 131, the Court held that the issue of waiver should have been submitted to the jury although it was not expressly pleaded.

The evidence taken in the light most favorable to the plaintiffs shows that they notified the defendant's agent of the fire loss; that the defendant's adjuster later visited the scene of the fire, took pictures, made measurements, and asked the plaintiffs to submit a list of the contents which were destroyed in the fire. The plaintiffs submitted this list as requested, and it was retained by the defendant without objection. The adjuster did not suggest to the plaintiffs that it was necessary to file a proof of loss, but returned, after his first visit, and advised the plaintiffs that the policy had been canceled. This position is completely inconsistent with the requirement of the filing of a proof of claim. The allegations and the evidence taken

in the light most favorable to the plaintiffs justify the submission of the issues of waiver and estoppel to the jury. The court charged the jury on waiver and estoppel, without objection or exception on the part of defendant, nor did defendant make any exception to the issue submitted. In the trial below there was no error.

Affirmed.

MALLARD, C.J., and CAMPBELL, J., concur.